KIERRA THOMAS, ET AL.                          CIVIL ACTION

VERSUS                                                      NO. 18-4373

RANDALL CHAMBERS, ET AL.                 SECTION "R" (4)

## ORDER AND REASONS

Before the Court is (1) plaintiffs' motion *in limine* to exclude the testimony of Dr. Torrence Welch, defendants' accident reconstruction and biomechanical engineering expert; (2) defendants' motion *in limine* to exclude the testimony of James Pittman, plaintiffs' accident reconstruction expert; and (3) defendant God's Way Trucking, LLC's motion for partial summary judgment on plaintiffs' direct negligence claim. The Court finds that (1) Dr. Welch's opinions, except for his specific medical causation opinions, are reliable and admissible at trial; (2) Pittman's expert opinions are inadmissible because they do not require any specialized knowledge; and (3) God's Way is entitled to summary judgment on plaintiffs' direct negligence claims because God's Way has stipulated that it is vicariously liable for the alleged accident at the center of this litigation.

# I.    BACKGROUND

This case arises out of a motor vehicle accident in Orleans Parish.[1]  On April 24, 2017, plaintiff Kierra Thomas was allegedly driving an automobile westbound on Interstate 10 in the right-hand lane with plaintiffs Antoine Clark and Shirley Harris as passengers.[2]  Defendant Randall Chambers was allegedly driving a tractor-trailer next to plaintiffs in the middle lane.[3] Chambers was driving the tractor-trailer in the course of his employment with defendant God's Way Trucking, LLC.[4]  Plaintiffs allege that Thomas was driving "straight in a cautious fashion" when Chambers negligently attempted to move into the right-hand lane without "keep[ing] a proper lookout."[5]  Chambers's vehicle allegedly struck plaintiffs' vehicle, causing all three plaintiffs to be "violently jolted."[6]  All three plaintiffs allege that the accident caused serious injuries to their necks and backs.[7]  They have each received medical treatment for injuries to their cervical and lumbar spines.[8]

---

[1]    R. Doc. 1-4.
[2]    *Id.* at 3 ¶¶ 7-8.
[3]    *Id.* ¶ 9.
[4]    *Id.* at 2 ¶ 3; R. Doc. 36-4 at 3.
[5]    R. Doc. 1-4 at 3 ¶ 10.
[6]    *Id.* ¶¶ 10-11.
[7]    *Id.* at 5 ¶ 16; 6 ¶¶ 19 & 22.
[8]    *See* R. Doc. 88-3 at 17-21.

On April 6, 2018, plaintiffs filed suit against Chambers, God's Way, and defendant Canal Insurance Company.[9] Canal Insurance allegedly insured the vehicle Chambers drove on the day of the collision.[10] Plaintiffs allege that Chambers's negligence caused their injuries, and that God's Way is liable for their damages as Chambers's employer under the doctrine of respondent superior.[11] Plaintiffs also allege causes of action for negligent entrustment and negligent hiring, training, and supervising against God's Way.[12] Defendants removed the action to federal court on April 27, 2018, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[13] Trial is scheduled to commence on April 29, 2019.[14]

In advance of trial, plaintiffs move to exclude defendants' accident reconstruction and biomechanical engineering expert, Dr. Torrence Welch.[15] Defendants move to exclude plaintiffs' accident reconstruction expert, James Pittman.[16] God's Way also moves for partial summary judgment on plaintiffs' direct negligence claims.[17]

---

[9]   *Id.* at 2 ¶ 3.
[10]  *Id.*
[11]  *Id.* at 4 ¶¶ 13-14.
[12]  *Id.* ¶ 14.
[13]  R. Doc. 1.
[14]  R. Doc. 9.
[15]  R. Doc. 55.
[16]  R. Doc. 58.
[17]  R. Doc. 36.

## II.   LEGAL STANDARD

### A.   Admissibility of Expert Testimony

A district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702, which governs the admissibility of expert testimony.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).   Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  To be admissible, Rule 702 requires that (1) the testimony be based on sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case.  *Id.*

In *Daubert v. Merrell Dow Pharmaceuticals, Incorporated*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (clarifying that the *Daubert* gatekeeping obligation applies to all forms of expert

testimony).  The Court's gatekeeping function involves a two-part inquiry. First, the Court must determine whether the expert testimony is reliable. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  The Court must assess whether the reasoning or methodology underlying the expert's testimony is valid.  *See Daubert*, 509 U.S. at 590.  The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.  *See id.*  The Court's inquiry into the reliability of expert testimony is flexible and necessarily fact-specific. *See Seatrax, Inc.*, 200 F.3d at 372.

Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence.  *See Daubert*, 509 U.S. at 591. This is primarily an inquiry into the relevance of the expert testimony.  *See id.*; *see also Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Expert testimony is unnecessary if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

But a court's role as a gatekeeper does not replace the adversary system.  *Daubert*, 509 U.S. at 596.  "Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

## B.     Summary Judgment

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either

support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

### A. Plaintiffs' Motion to Exclude Dr. Torrence Welch

Plaintiffs seek to exclude the expert opinion of Dr. Torrence Welch.[18] Dr. Welch presents himself as an expert in both biomechanical engineering and vehicle accident reconstruction.[19] He opines in his report that the collision between Chambers and plaintiffs was a "sideswipe" in which "little to no change in speed occurs for either vehicle."[20] He further opines that in this type of collision, the plaintiffs' bodies "would have experienced very

---

[18]    R. Doc. 55.
[19]    R. Doc. 88-3 at 73.
[20]    *Id.* at 16.

minor shaking and vibration motions, characterized by minimal lateral bending of their cervical spines, well within the normal range of motion."[21] Dr. Welch concludes that because this type of accident results in movement that is within the normal range of motion, it does not typically create the "mechanism" for the cervical and lumbar spinal injuries that plaintiffs allege they have suffered as a result of the collision.[22]

Plaintiff seeks to exclude Dr. Welch's opinion because (1) he is biased and unqualified to render these opinions, (2) his methodology is unreliable, and (3) his opinion is irrelevant.[23] The Court finds that Dr. Welch's report is admissible to the extent that he opines about the type of collision Chambers and plaintiffs experienced, the force of impact that the human body would typically sustain in that type of collision, and how a hypothetical person's body would typically respond to that force of impact. But because Dr. Welch is not qualified to render a medical opinion, he is excluded from offering at trial any opinion about plaintiffs' specific injuries in this case, and whether their injuries were caused by the collision.

---

[21] *Id.* at 4.
[22] *Id.*
[23] R. Doc. 55-1.

### 1. *Qualifications*

Dr. Welch is qualified to offer both a biomechanical engineering opinion and an opinion regarding the type of collision Chambers and plaintiffs experienced. He holds a PhD in biomedical engineering, which was awarded jointly by the Georgia Tech School of Engineering and the Emory University School of Medicine.[24] He also holds an Accredited Traffic Reconstructionist License, and is a member of the Society of Automotive Engineers.[25] Because an expert need only possess a higher degree of knowledge, skill, experience, training, or education than an ordinary person in the subject matter of his testimony, the Court finds that Dr. Welch is qualified to serve as an expert in biomechanical engineering and accident reconstruction. *See Burgo v. Davis*, No. 15-2430, 2016 WL 3257589, at *1, 3-4 (E.D. La. June 14, 2016) (permitting testimony regarding accident reconstruction from an expert who was registered with the "Accreditation Commission for Traffic Accident Reconstruction"); *Sandifer v. Hoyt Archery, Inc.*, No. 12-322, 2015 WL 4429189, at *5 (M.D. La. July 20, 2015) (biomechanical engineering expert who held a bachelor's and a master's

---

[24]   R. Doc. 88-3 at 73.
[25]   *Id.*

degree in mechanical engineering, and a PhD in engineering mechanics and biomechanics, was qualified to testify at trial).

But Dr. Welch is not qualified to offer medical causation opinions at trial. Federal courts have found that biomechanical engineering experts like Dr. Welch are qualified to offer opinions on "what injury causation forces are in general" and "how a hypothetical person's body will respond to those forces," but are "not qualified to render medical opinions regarding the precise cause of a specific injury." *Laski v. Bellwood*, 215 F.3d 1326, 2000 WL 712502, at *3 (6th Cir. May 25, 2000); *see also Collett v. GEICO Cas. Co.*, No. 16-15908, 2017 WL 4553525, at *1 (E.D. La. Oct. 11, 2017). Dr. Welch is not certified in any medical specialty. Nor does he hold a medical degree. He therefore cannot offer an opinion on whether the estimated forces plaintiffs experienced during the collision in fact caused their injuries. He may testify only to "the amount of force he believes was generated by the accident and the observed effect of such force on a hypothetical human body in a comparable accident." *Collett*, 2017 WL 4553525, at *1.

For instance, Dr. Welch cannot opine at trial—as he does in his report— that the "[t]he dynamics of the subject vehicle interaction were insufficient to result in sprain/strain injuries *for Ms. Thomas, Mr. Clark, and Ms.*

*Harris.*"[26]  Nor can he testify that the accident "provided no impetus for the structural exacerbation, aggravation, or progression of the pre-existing degenerative or congenital conditions present with the spines of [each plaintiff]."[27]  These are the types of specific medical causation opinions that are outside of his expertise.

## 2.    Reliability

Dr. Welch's accident reconstruction opinion, and his opinion regarding the forces plaintiffs would experience in such a collision and how the human body typically responds to such forces, are reliable and therefore admissible.

Dr. Welch's principal accident reconstruction opinion is that the collision was a sideswipe that resulted in no change in speed for either vehicle.[28]  To form his opinion, Dr. Welch primarily relies upon (1) the parties' testimony regarding their speed at the time of collision, (2) the parties' testimony regarding the movement of the car upon impact, and (3) the visible damage to plaintiffs' car.[29]  In addition, Dr. Welch cites information from the New Orleans Police Department (NOPD) incident report and 911 calls, bodycam footage from the NOPD officer who arrived at

---

[26]    *Id.* at 25 (emphasis added).
[27]    *Id.* at 5.
[28]    *Id.* at 16.
[29]    *Id.* at 14-17.

the scene, and published data on the weight and size of the two vehicles.[30] According to Dr. Welch, the evidence he reviewed suggests that the collision was a sideswipe because "it would have required over 2,400 pounds of lateral force to overcome friction and move [plaintiffs' vehicle] from its original trajectory."[31]  But as Dr. Welch notes, if that amount of force had been exerted on plaintiffs' vehicle, the side panels of the vehicle would have "exhibited far more substantial damage than was present."[32]  Furthermore, no plaintiff reported that their vehicle crossed into a different lane as a result of the collision, or that they lost control of the vehicle.[33]

First, Dr. Welch's opinion satisfies Rule 702's requirement that an opinion be "based on sufficient facts or data," even though he was not able to inspect the vehicles directly and did not visit the accident scene.  Fed. R. Evid. 702(b); *See Burgo*, 2016 WL 3257589, at *1, 4 (accident reconstruction expert's opinion reliable when he relied upon photographic evidence of the accident, but did not personally inspect the vehicles); *cf. Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (accident reconstruction expert's opinion not admissible when he did not collect any information from the accident

---

[30]     *Id.* at 26-28.
[31]     *Id.* at 16.
[32]     *Id.*
[33]     *Id.*

scene).  Second, the methodology Dr. Welch uses to draw his conclusion has been found to be reliable by other federal courts assessing the opinions of accident reconstruction experts.  *See, e.g.*, *Graham v. Hamilton*, 872 F. Supp. 2d 529, 538-39 (W.D. La. 2012) (expert's methodology reliable when he detailed the impacts the plaintiff's car sustained based on a review of the police reports, eyewitness accounts, and photographs of the accident scene, and then used his expertise to estimate the vehicle's likely change in speed as a result of the collision).  Dr. Welch sufficiently articulates how the evidence before him informed his conclusion that the collision was a sideswipe that resulted in no change in speed.[34]

Dr. Welch's biomechanical opinion regarding the forces likely exerted on plaintiffs' bodies in this sideswipe collision, and the human body's response to those forces in a hypothetical scenario, is also reliable.  First, he applies studies showing the force of impact in sideswipe collisions of this nature.[35]  He explains in an affidavit that the peer-reviewed and published studies he relies upon show that sideswipe collisions involve an acceleration force of less than 1.5g, regardless of the sizes or weights of the vehicles involved.[36]  He further explains that "the general consensus of all

---

[34]  *See id.* at 14-17.
[35]  *Id.* at 22.
[36]  R. Doc. 88-5 at 8.

experimental research on sideswipe accidents is that a sideswipe accident will result in mainly shaking and vibration motions of the vehicles . . . but not overall change in speed."[37]  Dr. Welch then applies studies showing that this amount of force—1.5g or less—is comparable to the "motions, accelerations, and loads experienced during daily activities."[38]  It is from these studies that Dr. Welch concludes that the accident did not create the "mechanism" for cervical and lumbar spinal injuries in a hypothetical person in a comparable accident.[39]

Dr. Welch represents in his affidavit that the studies he relies upon to reach his biomechanical opinion have been published in peer-reviewed journals and are widely accepted among the scientific, engineering, and medical communities.[40]  Other courts have recognized that the type of biomechanical analysis Dr. Welch employs is well-established and sufficiently reliable for finding the amount of force generated by an accident, and the observed effect of such force on a hypothetical human body.  *See Laski v. Bellwood*, 2000 WL 712502, at *3; *Herrera v. Werner Enters., Inc.*, No. 14-385, 2015 WL 12670443, at *4 (W.D. Tex. Sept. 28, 2015) (finding

---

[37]  *Id.* at 8-9.
[38]  R. Doc. 88-3 at 22.
[39]  *Id.* at 4.
[40]  R. Doc. 88-5 at 10-11.

that expert opinion on the forces likely exerted on the plaintiff's body in a collision properly relied upon biomechanical engineering studies that were generally accepted in the scientific community). Dr. Welch's biomechanical opinion is therefore reliable.

### 3. Relevance

Lastly, Dr. Welch's opinion is clearly relevant to the issues in this case. Plaintiffs object to Dr. Welch's report because he does not address "how the accident occurred or which party . . . is at fault."[41] Plaintiffs are correct that Dr. Welch does not opine on those matters, but that does not mean his testimony is irrelevant. The extent of plaintiffs' damages, and whether all of their purported injuries were caused by the alleged collision, are relevant issues at trial. While Dr. Welch is not qualified to offer a specific medical causation opinion, his opinion on the force of impact likely experienced by plaintiffs, and how the human body typically responds to that force of impact, will assist the jury in evaluating these issues.

## B. Defendants' Motion to Exclude James Pittman

Defendants move to exclude James Pittman, plaintiffs' accident reconstruction expert.[42] Pittman reviewed post-accident photographs of the

---

[41] R. Doc. 55-1 at 15.
[42] R. Doc. 58.

two vehicles, the police report, and plaintiffs' deposition testimony.[43] From this review, he concludes the following:

> The physical evidence supports a collision occurring between the [plaintiffs' vehicle] and the right rear of [Chambers's vehicle]. Testimony from [plaintiffs] support the truck changing lanes into the lane they were lawfully occupying. The contact points described by them w[ere] consistent with the damage found and contact points observed in the photographs. . . . The movement described by the occupants moving left to right is consistent with this type of crash. In that a force would be applied moving left to right and the occupants would initially move in the direction of the force (left).[44]

This opinion is not an admissible expert opinion because it requires no expertise and relates to issues that are within the common knowledge of a lay juror.

According to the Advisory Committee Notes to Rule 702, "whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." The Fifth Circuit has expressly recognized that expert testimony should be excluded if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.,* 898 F.2d 448, 450 (5th Cir. 1990). In *Peters,* the plaintiff was injured while unloading machinery on an offshore supply vessel. The Court found that expert testimony was

---

[43]     R. Doc. 58-3.
[44]     *Id.* at 10.

unnecessary for the jury to assess whether it was reasonable for the plaintiff's employer to instruct employees to move equipment manually during heavy seas, whether cargo was improperly stowed, and whether diesel fuel made the deck of the boat slippery. *Id.* at 449-50; *see also Thomas v. Global Explorer, LLC*, No. 02-1060, 2003 WL 943645, at *2 (E.D. La. Mar. 3, 2003) (excluding expert testimony as to whether the position of a rope on a vessel was a potential safety hazard, because the opinion did not require "expertise of any kind").

Here, Pittman's opinion that a collision occurred is based on his finding that the visible damage to the right rear tire of Chambers's vehicle, and the damage to the front left side of plaintiffs' vehicle, is consistent with plaintiffs' testimony.[45] Unlike Dr. Welch, Pittman does not employ any type of specialized knowledge, and he did no scientific or specialized analysis to come to a conclusion about the type of collision that the parties experienced.[46] He cites no published references or data and did no calculations. Pittman simply concludes that the evidence "supports a

---

[45]    *Id.* at 4-5.

[46]    *See* R. Doc. 88-3 at 15-16 (Dr. Welch explaining that the collision was a sideswipe because based on the extent of the damage, not enough force was exerted on plaintiffs' vehicle to move the vehicle "from its original trajectory").

collision occurring," because the "contact points described by [plaintiffs] was consistent with the damage" in the photographs of the vehicles.[47]  A lay juror would be able to look at pictures and listen to witnesses to draw this same conclusion.  A lay juror is also capable of concluding that plaintiffs' testimony regarding their movement in the car upon impact is consistent with the type of accident plaintiffs allege took place.  Thus, because no expertise is needed to arrive at Pittman's conclusions, his opinion will not assist the jury resolve any issue.  He therefore may not offer expert testimony at trial.  *See Peters,* 898 F.2d at 450.

### C.    Motion for Partial Summary Judgment

God's Way moves to dismiss plaintiffs' direct claims for negligent entrustment and negligent hiring, training, and supervising.[48]  Plaintiffs have not filed a brief in opposition to this motion.  God's Way argues that under Louisiana law, a plaintiff cannot maintain both a vicarious liability claim and a direct negligence claim against an employer for the negligence of its employee when the employer admits that the employee was within the course and scope of his employment at the time of the alleged tort.[49]  Because state law provides the rule of decision for plaintiffs' claims, the Court must

---

[47]    R. Doc. 58-3 at 10.
[48]    R. Doc. 36.
[49]    *See* R. Doc. 36-1 at 4.

apply the law as interpreted by the state's highest court. *See F.D.I.C. v. Abraham*, 137 F.3d 264, 267-68 (5th Cir. 1998); *Samuels v. Doctors Hosp., Inc.*, 588 F.2d 485, 488 (5th Cir. 1979). If there is no ruling by the state's highest court on the specific question, the Court must make an *Erie* guess as to how the state's highest court would decide the issue. *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 468 (5th Cir. 2004).

Several federal courts in Louisiana have recently determined that when it is undisputed that an employer is vicariously liable for the negligent acts of its employee, the plaintiff cannot also maintain a direct negligence claim against the employer. *See Dennis v. Collins*, No. 15-2410, 2016 WL 6637973 (W.D. La. Nov. 9, 2016); *Wright v. Nat'l Interstate Ins. Co.*, No. 16-16214, 2017 WL 5157537 (E.D. La. Nov. 7, 2017); *Franco v. Mabe Trucking Co., Inc.*, 17-871, 2018 WL 6072016 (W.D. La. Nov. 20, 2018); *Vaughn v. Taylor*, No. 18-1447, 2019 WL 171697 (W.D. La. Jan. 10, 2019).

Those decisions are grounded primarily in the Louisiana Third Circuit Court of Appeals' decision in *Libersat v. J & K Trucking, Inc*, 772 So. 2d 173 (La. App. 3 Cir. 2000). There, James Libersat died when the defendant's employee struck his vehicle. *Id.* at 174. Libersat's wife and daughters brought an action against the defendant, alleging it was vicariously liable for the driver's negligence, and directly negligent for not exercising reasonable

care in hiring and training him. There was no dispute that the driver was operating the vehicle within the course and scope of his employment, and that the defendant was vicariously liable for his alleged negligence.

At trial, the court did not instruct the jury that the defendant had a duty to exercise care in hiring and training its employee. *Id.* at 179. The appellate court held that the trial court did not abuse its discretion in withholding this jury instruction. *Id.* The court reasoned that if the driver breached a duty to the plaintiffs, then the defendant would be vicariously liable for his tort. *Id.* But if the driver did not breach his duty, "then no degree of negligence on the part of [the defendant] in hiring [the driver] would make [the defendant] liable to the [plaintiffs]." *Id.* In other words, there was no question that the defendant could be held liable for the driver's alleged negligence. The only disputed question was whether the driver was in fact negligent. Therefore, including a jury instruction for whether liability could attach to the defendant because of the defendant's purported negligence in hiring the driver was superfluous. In ruling that the trial court did not err in withholding this instruction, the court noted that the "trial judge has the responsibility of reducing the possibility of confusing the jury, and he may exercise the duty to decide what law is applicable." *Id.*

Here, in response to plaintiffs' Requests for Admissions, God's Way admitted that "at the time of the subject collision[,] Randall Chambers was acting within the course and scope of his employment."[50]  God's Way's admission "conclusively establish[es]" that God's Way is vicariously liable for Chambers's alleged negligence.  Fed. R. Civ. P. 36(b) ("A matter admitted [in response to a Rule 36 Request for Admission] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.").  Thus, there is no dispute that if a jury were to find that Chambers negligently caused the collision and defendants' resulting damages, God's Way can be held liable.  *Libersat* indicates that in such a situation, a court does not err by removing from the jury's consideration an alternative means for finding the employer liable for its employee's negligence.  772 So. 2d at 179.  The Court cannot locate any decision from the Louisiana Supreme Court addressing this specific question.  The Court therefore relies on *Libersat* for its *Erie* guess on how the state's highest court would decide this issue, and finds that summary judgment for God's Way on plaintiffs' direct negligence claims is proper.

There are also considerable prudential reasons for granting God's Way's motion.  Because God's Way's liability for Chambers's negligence is

---

not disputed, evidence at trial related to God's Way's alleged negligence in hiring or training Chambers would be superfluous and needlessly time-consuming. Any such evidence may confuse the jury about the pertinent issues at trial, and could inappropriately impact an award of damages. The Supreme Court of Missouri has considered this specific question, and likewise concluded:

> If all of the theories for attaching liability to one person for the negligence of another were recognized and all pleaded in one case where the imputation of negligence is admitted, the evidence laboriously submitted to establish other theories serves no real purpose. The energy and time of courts and litigants is unnecessarily expended. In addition, potentially inflammatory evidence comes into the record which is irrelevant to any contested issue in the case.

*McHaffie By & Through McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995).

In all, the Court finds that plaintiffs may not maintain both a direct negligence claim against God's Way and a claim that God's Way is vicariously liable for Chambers's negligence, because God's Way readily admits that it is vicariously liable for Chambers's alleged negligence. *See Dennis v. Collins*, No. 15-2410, 2016 WL 6637973 (W.D. La. Nov. 9, 2016); *Wright v. Nat'l Interstate Ins. Co.*, No. 16-16214, 2017 WL 5157537 (E.D. La. Nov. 7, 2017); *Franco v. Mabe Trucking Co., Inc.*, 17-871, 2018 WL 6072016 (W.D. La. Nov.

20, 2018); *Vaughn v. Taylor*, No. 18-1447, 2019 WL 171697 (W.D. La. Jan. 10, 2019). God's Way's motion is therefore granted.


## IV. CONCLUSION

For the foregoing reasons, defendants' motion to exclude the expert testimony of James Pittman is GRANTED. God's Way's motion for partial summary judgment on plaintiffs' claims for negligent entrustment and negligent hiring, training, and supervising is also GRANTED. Those claims are DISMISSED WITH PREJUDICE. Plaintiffs' motion to exclude the expert testimony of Dr. Torrence Welch is DENIED IN PART and GRANTED IN PART. Dr. Welch cannot offer at trial any medical causation opinion.


New Orleans, Louisiana, this ____17th____ day of April, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE