UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIERRA THOMAS, ET AL.                    CIVIL ACTION

VERSUS                                   NO. 18-4373

RANDALL CHAMBERS, ET AL.                 SECTION "R" (4)

## ORDER AND REASONS

Before the Court is (1) plaintiffs' omnibus motion *in limine*, (2) defendants' omnibus motion *in limine*, and (3) plaintiffs' motion to exclude the expert report and testimony of defendants' medical billing expert, Marilyn Pacheco. The Court rules on the parties' various motions *in limine* as explained below. The Court denies plaintiffs' motion to exclude Marilyn Pacheco because she is qualified to render her opinion, she employs a reliable methodology, and her opinions are relevant to impeach the credibility of plaintiffs' treating physicians at trial.


## I.    BACKGROUND

This case arises out of a motor vehicle accident in Orleans Parish.[1]  On April 24, 2017, plaintiff Kierra Thomas was allegedly driving an automobile

---

[1]    R. Doc. 1-4.

westbound on Interstate 10 in the right-hand lane with plaintiffs Antoine Clark and Shirley Harris as passengers.[2]  Defendant Randall Chambers was allegedly driving a tractor-trailer next to plaintiffs in the middle lane.[3] Chambers was driving the tractor-trailer in the course of his employment with defendant God's Way Trucking, LLC.[4]  Plaintiffs allege that Thomas was driving "straight in a cautious fashion" when Chambers negligently attempted to move into the right-hand lane without "keep[ing] a proper lookout."[5]  Chambers's vehicle allegedly struck plaintiffs' vehicle, causing all three plaintiffs to be "violently jolted."[6]  All three plaintiffs allege that they have suffered serious injuries to their necks and backs because of the collision.[7]  They have each received medical treatment for injuries to their cervical and lumbar spines.[8]

On April 6, 2018, plaintiffs filed suit in state court against Chambers, God's Way, and defendant Canal Insurance Company.[9]  Canal Insurance allegedly insured the tractor-trailer Chambers was driving on the day of the

---

[2]    *Id.* at 3 ¶¶ 7-8.

[3]    *Id.* ¶ 9.

[4]    *Id.* at 2 ¶ 3; R. Doc. 36-4 at 3.

[5]    R. Doc. 1-4 at 3 ¶ 10.

[6]    *Id.* ¶¶ 10-11.

[7]    *Id.* at 5 ¶ 16, 6 ¶¶ 19 & 22.

[8]    *See* R. Doc. 88-3 at 17-21.

[9]    R. Doc. 1-4 at 2 ¶ 3.

collision.[10]  Plaintiffs allege that Chambers's negligence caused their injuries, and that God's Way is liable for their damages as Chambers's employer under the doctrine of respondent superior.[11]  Defendants removed the action to federal court on April 27, 2018, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[12]

Defendants' primary defense is that plaintiffs intentionally caused the collision in order to recover from defendants in litigation.[13]  Defendants state in the Pretrial Order that "plaintiffs' vehicle was traveling at a greater speed than the defendants' vehicle at impact, indicating that plaintiffs sped up and drove into defendants' trailer."[14]  Defendants previously filed a counterclaim alleging that plaintiffs' filing of this lawsuit constituted a fraudulent misrepresentation entitling defendants to damages under Louisiana law.[15] The court dismissed the counterclaim because it was incompatible with an assertion that defendants justifiably relied on plaintiffs' alleged misrepresentations, and therefore was not legally cognizable.[16]

---

[10]  *Id.*
[11]  *Id.* at 4 ¶¶ 13-14.
[12]  R. Doc. 1.
[13]  *See* R. Doc. 152 at 11.
[14]  *Id.*
[15]  R. Doc. 13.
[16]  R. Doc. 20.

3

## II.   DISCUSSION

### A.   Plaintiffs' Omnibus Motion *in limine*

> 1.   *Plaintiffs' First Motion in limine to Exclude Collateral Sources of Income or Funds, and Defendants' Sixth Motion in limine to Exclude Attorney-Negotiated Discounts*

Plaintiffs move to exclude any evidence or reference to their receipt of collateral sources of income or funds.[17]   Defendants move to reduce from any award of past medical expenses (1) the value of any attorney-negotiated write-offs or discounts, and (2) charges for "narrative reports conferences, and other related services incurred for litigation purposes."[18]   Because these motions involve many of the same legal issues, the Court considers them together.

The collateral source rule "bars a tortfeasor from reducing the damages it owes to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor."   *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 304 (5th Cir. 2008) (internal quotations omitted).   The collateral source rule applies only to benefits that the plaintiff "paid for . . . or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual

---

[17]   R. Doc. 61-1 at 1-4.
[18]   R. Doc. 47-1 at 6.

4

windfall or double recovery would result from application of the rule." *Hoffman v. 21st Century N. Am. Ins. Co.*, 209 So. 3d 702, 706 (La. 2015). Because a jury is not permitted to reduce a plaintiff's damages because of these types of collateral benefits, the collateral source rule also "operates to exclude evidence of collateral benefits because it may unfairly prejudice the jury." *Trico Marine Assets Inc. v. Diamond B Marine Servs. Inc.*, 332 F.3d 779, 794 n.7 (5th Cir. 2003). But evidence of collateral sources of funds is admissible in certain situations "for a limited purpose if there is little risk of prejudice and the court gives the jury a limiting instruction." *Id.*; *Snider v. N.H. Ins. Co.*, No. 14-2132, 2016 WL 9412608, at *1 (E.D. La. Oct. 27, 2016) (noting that evidence of collateral sources of medical payments would be admissible for impeaching plaintiff); *Dumas v. Harry*, 638 So. 2d 283, 286 (La. App. 5 Cir. 1994) (collateral source evidence is admissible to impeach the credibility of a witness).

First, plaintiffs' motion is denied because plaintiffs do not name a specific payment made for their benefit that should be excluded at trial. They instead seek to generally exclude "[b]enefits from hospitalization, medical, or other collateral insurance coverage."[19] Determining whether a payment is barred by the collateral source rule requires an analysis of the specific nature

---

[19]     R. Doc. 61-1 at 2.

of the payment.  For instance, evidence of insurance payments is covered by the collateral source rule.  *See Bozeman v. State*, 879 So. 2d 692, 698 (La. 2004) ("The collateral source rule has been applied to a variety of factual circumstances, although it typically applies to tort cases involving insurance payments or other benefits.").  On the other hand, the rule does not apply to "attorney-negotiated write-offs or discounts for medical expenses obtained as a product of the litigation process."  *Hoffman*, 209 So. 3d at 706.  Because plaintiffs' proposed blanket ban could encompass evidence that is arguably not covered by the collateral source rule, their motion is denied.  *Sheppard v. Liberty Mut. Ins. Co.*, No. 16-2401, 2017 WL 480601, at *1-2 (E.D. La. Feb. 2, 2017) (dismissing motion for a blanket ban on evidence of collateral sources of funds because the motion did not identify any specific evidence that should be excluded).

Second, defendants' motion is granted on the narrow issues they pose. Plaintiffs may not recover the full amount of their medical bill if a portion of that bill was reduced by attorney-negotiated write-offs or discounts.  *See Hoffman*, 209 So. 3d at 706-07.  This ruling is limited to write-offs or discounts obtained as a result of plaintiffs' *attorney's* negotiations.  Any discounts or write-offs obtained through negotiations by a health insurer, *Patterson v. State Farm Mut. Automobile Ins. Co.*, 244 So. 3d 800, 803-04

(La. App. 2 Cir. 2017), or a plaintiff individually, *Lockett v. UV Ins. Risk Retention Grp., Inc.*, 180 So. 3d 557, 571-71 (La. App. 5 Cir. 2015), are subject to the collateral source rule, and therefore are not deducted from plaintiffs' recoverable medical expenses.

Defendants' motion to exclude from plaintiffs' medical expenses charges for "narrative reports, conferences, and other related services" is also granted.[20]   These expenses are not recoverable as damages.   *Hunter v. Kroger Co.*, 600 So. 2d 837, 845-46 (La. App. 3 Cir. 1992).

Next, the parties' opposition briefs to these motions address the admissibility of evidence regarding payments by two third-party companies—Total Medical Concepts, LLC (TMC) and Medport LA—to plaintiffs' treating physicians.[21]   Both parties discuss this issue in their oppositions even though neither party specifically seeks a ruling on the admissibility of these payments in their motions.  The Court will nonetheless address the admissibility of this evidence because (1) plaintiffs' motion arguably encompasses the issue, and (2) the issue has been fully briefed.

---

[20]   R. Doc. 47-1 at 6.
[21]   *See* R. Doc. 76 at 1-6; R. Doc. 83-1 at 6-15.

Plaintiffs explain that TMC and Medport are third-party litigation funding companies.[22]  Both companies purchased the "accounts receivable" associated with plaintiffs' medical bills from plaintiffs' healthcare providers at a discount.[23]  Plaintiffs state that the healthcare providers accepted this discounted payment in order to obtain an upfront payment.[24]  Plaintiffs further explain that each of them and their counsel are obligated to pay TMC and Medport the full amount of their medical bills from any damages awarded in this case.[25]  TMC and Medport thus recover as profit the difference between the full value of the medical bills and the discounted rate they paid to the healthcare providers.  Plaintiffs state that neither they nor their counsel participated in the negotiations between the third-party funding companies and the healthcare providers.[26]  Plaintiffs emphasize that they do not directly benefit from this third-party arrangement, because  they are still obligated to pay TMC and Medport the full value of their medical bills.[27]

---

[22]    R. Doc. 83-1 at 7.

[23]    *Id.*

[24]    *Id.*

[25]    *Id.* at 7-8.

[26]    *Id.* at 7.

[27]    *Id.* at 10.

Defendants may not introduce evidence regarding this financial arrangement to argue that plaintiffs' recovery in this litigation should be limited to the discounted rate paid by TMC and Medport to their healthcare providers.  To the extent defendants argue that *Hoffman* dictates that plaintiffs can recover only this discounted rate, that argument is unavailing. First, *Hoffman* provides that *attorney-negotiated* discounts and write-offs are not subject to the collateral source rule.  *Hoffman*, 209 So. 3d at 706.  But plaintiffs maintain that their counsel took no part in the negotiations between TMC, Medport, and their treating physicians.  Second, the court in *Hoffman* concluded that the plaintiff could not recover the full value of his medical bill before the write-off because "the plaintiff did not actually incur" the full expense of his medical bill, and did not suffer a "diminution of his patrimony to obtain the write-off."  *Hoffman*, 209 So. 3d at 706.  Here, plaintiffs state—and defendants do not dispute—that they are obligated to pay to TMC and Medport the full value of their medical bills.  Thus, because plaintiffs have not actually received a benefit from the discount negotiated between the third-party funding companies and the healthcare providers, defendants cannot subtract that discount from a hypothetical damage award to plaintiffs.  *See Whitley v. Pinnacle Entm't, Inc. of Del.*, No. 15-595, 2017 WL 1051188, at *1-2 (W.D. La. Mar. 20, 2017) (*Hoffman* exception does not

9

apply to discounts received by third-party funding company, when the plaintiff is still obligated to pay the full amount of the medical bill).

But defendants argue that evidence of this financial arrangement between the healthcare providers, the third-party funding companies, and plaintiffs is admissible for a separate purpose.[28]   Defendants cite *ML Healthcare, LLC v. Publix Supermarkets, Incorporated*, to argue that the evidence is admissible to impeach the credibility of plaintiffs' treating physicians who testify at trial, and to show that plaintiffs' medical bills are unreasonable.  *See* 881 F.3d 1293 (11th Cir. 2018).  Evidence of this financial arrangement does not implicate the collateral source rule if it is introduced for this purpose.  *Snider*, 2016 WL 9412608, at *1; *Dumas*, 638 So. 2d at 286. The Court also finds that this evidence is admissible under Federal Rule of Evidence 401 for the purpose of impeaching the credibility of plaintiffs' treating physicians.

The financial arrangement at the center of *ML Healthcare* is similar to the arrangement the parties describe in their briefs.  In *ML Healthcare*, the third-party funding company had a business model of matching injured, uninsured plaintiffs who have viable tort claims with treating physicians.  *Id.* at 1301.  The funding company would then purchase at a discounted rate the

---

[28]     *Id.* at 5-6.

medical bills those physicians would generate. *Id.* The funding company entered into an agreement with the plaintiffs allowing it to recover the full amount of the medical bills from any tort damages plaintiffs recovered. *Id.* The agreement permitted the funding company to recover from the plaintiffs even if the plaintiffs did not win their tort lawsuit. *Id.* But the court noted that the risk that the plaintiffs would not pay their debt to the funding company would increase substantially if the plaintiffs did not recover damages. *Id.* at 1301-02.

The Court found that because of this arrangement, both the third-party funding company and the treating physicians had a financial interest in the plaintiff's winning her lawsuit. *Id.* at 1302. The defendants argued that the arrangement thus created a risk that the plaintiff's treating physicians would be biased when testifying on her behalf at trial. *Id.* The Court explained that, according to the defendant's theory:

> [I]f a doctor did not provide a favorable causation analysis—which is necessary to win a tort action—[the funding company] likely would find other doctors who would. Thus, to continue to receive referrals from [the funding company]—and the guaranteed income stream they generate—the treating doctors have an incentive to provide analyses that help these patients—and, by extension, [the funding company]—win their cases.

*Id.* The court ruled that the district court did not abuse its discretion by permitting evidence of this business arrangement "for the limited purpose of

showing bias on the part of the doctors who testified" on the plaintiff's behalf. *Id.* The court declined to rule on whether the evidence was admissible to show the medical bills generated by the treating physicians were unreasonably high, because the defendants had not used the evidence in that manner at trial. *Id.* at 1303.

The Court finds the decision in *ML Healthcare* persuasive. The financial arrangement between plaintiffs' healthcare providers and the third-party funding companies could create an incentive for plaintiffs' treating physicians to want plaintiffs to win their case, because a victory could result in more referrals from TMC and Medport. That incentive could lead a jury to question the treating physicians' testimony regarding causation. This evidence is thus relevant under Rule 401 because it is probative of whether a witness at trial is biased. *United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). The evidence is therefore admissible to impeach the credibility of plaintiffs' treating physicians who testify.

Evidence of this financial arrangement is not admissible to attack the reasonableness of the medical bills generated by plaintiffs' healthcare

providers. The only reason for defendants to introduce this evidence for that purpose would be to convince the jury to reduce plaintiffs' award of past medical expenses even if the jury were to find that Chambers's negligence caused their injuries. But Louisiana courts routinely state that the trier of fact commits reversible error if it finds that the plaintiff has incurred past medical expenses because of the defendant's negligence, but then does not award the plaintiff the full amount of those expenses. *See, e.g.*, *Gunn v. Robertson*, 801 So. 2d 555, 564 (La. App. 5 Cir. 2001); *Yee v. Imperial Fire & Cas. Ins. Co.*, 25 So. 3d 872, 877 (La. App. 2 Cir. 2009); *Revel v. Snow*, 664 So. 2d 655, 661 (La. App. 3 Cir. 1995). The court in *Gunn* explained:

> A tortfeasor is required to pay for medical treatment of his victim, even over treatment or unnecessary treatment, unless such treatment was incurred by the victim in bad faith. A trier of fact is in error for failing to award the full amount of medical expenses proven by the victim. A jury errs by not awarding the full amount of medical expenses incurred as a result of injuries caused by the accident when the record demonstrates that the victim has proven them by a preponderance of the evidence.

*Gunn*, 801 So. 2d at 564 (quoting *Lombas v. S. Foods, Inc.*, 760 So. 2d 1282, 1289-90 (La. App. 5 Cir. 2000)) (internal citations omitted).

Defendants thus cannot introduce evidence of this financial arrangement to attack the reasonableness of plaintiffs' medical bills, because using the evidence in this manner would invite the jury to do something it cannot do. *See* Fed. R. Evid. 401 (evidence is relevant if "it has a tendency to

make a fact more or less probable" and "the *fact is of consequence in determining the action*" (emphasis added)).   In the event the jury finds defendants liable for plaintiffs' injuries, it could reduce plaintiffs' award for past medical expenses only if it found that not all of their injuries were caused by Chambers's negligence, or if plaintiffs incurred unnecessary treatment in bad faith.   *Id.*   Reducing a damages award because a medical bill is unreasonably high is different from reducing an award because defendants incurred additional, unnecessary treatment.   The latter addresses whether all of plaintiffs' treatment was caused by Chambers's negligence—which is within the jury's province to decide—while the former addresses whether the treating physician overcharged plaintiffs for their treatment—which is not. *See Gunn*, 801 So. 2d at 564; *Yee*, 25 So. 3d at 877; *Revel*, 664 So. 2d at 661.

To summarize: defendants are permitted to introduce evidence of the financial arrangement between plaintiffs' healthcare providers and third-party funding companies for the limited purpose of impeaching the credibility of plaintiffs' treating physicians who testify.   This evidence is not admissible for any other purpose.   The Court will include an instruction to the jury that this evidence cannot be used to reduce the amount of plaintiffs' recoverable medical expenses.

### 2.   Other Litigation Claims

Plaintiffs' second motion in their omnibus motion is to exclude evidence regarding plaintiffs' "other prior or subsequent claims, suits, or settlements."[29]  Plaintiffs' eighteenth motion *in limine* is to exclude "prior claims and/or litigation" in which plaintiffs have been involved.[30]  The Court sees no difference between these two motions and will address them together.

Plaintiffs generally seek to exclude evidence related to other litigation claims they have filed.  Neither plaintiffs nor defendants address this issue with any specificity.  Defendants purport to address this motion, but in the process refer to evidence they intend to introduce related to *accidents* in which plaintiffs were previously involved.[31]  It is not clear from defendants' brief whether these other accidents resulted in litigation.

Because neither party addresses this issue with any specificity, the Court cannot determine whether any prior lawsuits plaintiffs may have filed are relevant to these proceedings.  Plaintiffs' prior claims, if any, could be probative of defendants' argument that plaintiffs intentionally caused the

---

[29]   R. Doc. 61-1 at 4.
[30]   *Id.* at 15-17.
[31]   R. Doc. 76 at 6-11.

subject collision to recover damages in litigation.  The Court therefore denies plaintiffs' motion.

### 3.    Impact on Insurance Rates

Plaintiffs move to exclude any "offer or suggestion, directly or indirectly," that the jurors' "insurance rates, premiums[,] or medical bills" could rise as a result of an award of damages in this matter.[32]

Plaintiffs' motion is granted.  Suggesting to a juror that he or she has a pecuniary interest in the outcome of a case is prejudicial to the issue of damages, and therefore not a proper line of argumentation.  *See Bourg v. Fireman's Fund Ins. Co.*, No. 99-1066, 2000 WL 14681, at *2 (E.D. La. Jan. 6, 2000).

### 4.    Prior Disclosure of Witnesses

Plaintiffs move to prohibit defendants from referring to or introducing at trial any evidence that was not previously disclosed in discovery.[33]

The Court stated in its Scheduling Order that no lay or expert witness would be permitted to testify at trial, and no exhibit could be used at trial, unless the witness or exhibit was disclosed to the opposing party in

---

[32]    R. Doc. 61-1 at 4.

[33]    *Id.* at 4-5.

16

compliance with the Court's Order.[34]  The Court's Trial Preparation and Procedures Order reiterated that any witnesses not included in the parties' witness lists would not be permitted to testify, except as a rebuttal witness.[35] Finally, the Court stated in its Pretrial Notice that only exhibits listed in the parties' Pretrial Order shall be admissible at trial, except for exhibits intended to be used solely for impeachment and for which the parties have submitted a memorandum to the Court.[36]  Both parties must comply with these orders.  Plaintiffs do not actually specify whether defendants seek to introduce any testimony or exhibits in violation of these orders.  Because plaintiffs do not specify what relief they seek other than a reiteration from the Court that the parties must comply with the Court's prior orders, plaintiffs' motion is denied.

Plaintiffs also argue that any impeachment or rebuttal evidence defendants intend to present must be disclosed at trial "outside of the hearing of the jury" to allow plaintiffs time to argue "irrelevancy and/or inadmissibility issues."[37]  Either party may object to the introduction of previously undisclosed impeachment or rebuttal evidence, on the basis that

---

[34]     R. Doc. 9 at 3.
[35]     R. Doc. 165 at 1.
[36]     R. Doc. 9-1 at 6.
[37]     R. Doc. 61-1 at 5.

the proffered evidence is in fact "substantive" and should have been disclosed before trial.  *See Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993).  If necessary, the Court will conduct a brief conference—that the jury will not be able to hear—to discuss the proffered evidence.

### 5.    *Employment of Counsel*

Plaintiffs move to exclude any reference to "[t]he time and circumstances under which plaintiff[s] employed [their] attorneys."[38]  The Court cannot determine at this time whether this information will be relevant at trial.  Nor can the Court determine at this time whether this information will be more prejudicial than probative under Federal Rule of Evidence 403.  Plaintiffs' motion is therefore denied.  The Court may revisit this issue at trial when it sees the specific evidence the parties rely upon and the specific arguments they make.

### 6.    *Taxation of Plaintiffs' Recovery*

Plaintiffs move to exclude any reference to whether their recovery of damages will be considered income within the meaning of state and federal tax laws.[39]  The motion is granted.  Neither party is permitted to raise the issue of whether any recovery will be taxed as income, because that issue is

---

[38]    *Id.*
[39]    *Id.*

not relevant under Federal Rule of Evidence 401. The Court will instruct the jury that it may not consider the effect of the tax laws on any award of damages.

### 7. *Expert Studies*

Plaintiffs move to exclude any undisclosed studies that defendants' experts either performed or relied upon in forming their opinions.[40] This motion is covered by Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c). Under Rule 26(a)(2)(B)(ii), experts are obligated to include in their reports "the facts or data considered by the witness in forming" their opinions. Under Rule 37(c), a party is not allowed to use at trial information that was not disclosed in accordance with Rule 26(a), unless the party's failure to disclose the information was substantially justified or harmless.

Because plaintiffs do not specifically identify any testimony they seek to exclude at trial under these rules, their motion is denied.

### 8. *Attorney Referrals to Healthcare Providers*

Plaintiffs move to exclude any reference at trial to discussions they had with their counsel regarding referrals to healthcare providers.[41] The attorney-client privilege "protects communications from the client to the

---

[40]    *Id.*
[41]    *Id.* at 6.

attorney made in confidence for the purpose of obtaining legal advice." *Wells v. Rushing*, 755 F.2d 376, 379 n.2 (5th Cir. 1985).  The privilege "shields communications from the lawyer to the client only to the extent that the[y] are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney." *Id.*

Plaintiffs seek to exclude information that is not necessarily protected by the attorney-client privilege.  To the extent plaintiffs' discussions with counsel regarding referrals to treating physicians were made to facilitate legal advice or a legal strategy for this litigation, the discussions would be protected.  *See Soriano v. Treasure Chest Casino, Inc.*, No. 95-3945, 1996 WL 736962, at *2 (E.D. La. Dec. 23, 1996).  But if the discussions were not related to legal issues in this case, such as referrals simply for plaintiffs' health, they would not be protected. *Id.*  In addition, evidence of *the fact* that plaintiffs' counsel referred plaintiffs to a healthcare provider is not covered by the attorney-client privilege, because that evidence does not disclose any confidential communications.

Plaintiffs' motion is therefore denied because the Court cannot determine whether the specific communications plaintiffs seek to exclude are covered by the attorney-client privilege.

### 9.    Inflammatory Arguments by Counsel

Plaintiffs move to exclude certain inflammatory rhetoric at trial.[42] Plaintiffs specifically want to prohibit (1) any reference to a need for "tort reform," or that there are "too many lawsuits" or "too much litigation;" (2) any "comment reference and/or implication tending to suggest, in any way, that jurors would be damaged or suffer financial consequences if an adverse judgment was rendered against the defendants in this case;" and (3) any reference to "jackpot justice" or that plaintiffs are attempting to "win the lottery" in this litigation.[43]  Defendants do not object to plaintiffs' motion.[44]

Plaintiffs' motion to exclude these statements, or any variation of them, is granted.  These hypothetical statements are not relevant under Federal Rule of Evidence 401.

### 10.    Limits on Use of Deposition Testimony

Plaintiffs move to exclude defendants from introducing into evidence testimony from any deposition at which plaintiffs were not present or represented, or any deposition of which they did not have reasonable notice.[45]

---

[42]    *Id.* at 6-7.

[43]    *Id.*

[44]    R. Doc. 76 at 15.

[45]    R. Doc. 61-1 at 15 at 7.

Under Federal Rule of Civil Procedure 32(a), at trial no party may use all or part of a deposition unless the opposing party was present or represented at the taking of the deposition or had reasonable notice of it. Fed. R. Civ. P. 32(a)(1).  Notwithstanding Rule 32(a)(1), "[a]ny party may use a deposition to contradict or impeach the testimony given by the deponent as a witness" at trial.  *Id.* 32(a)(2).

Plaintiffs do not actually specify any deposition testimony that they seek to exclude under this Rule.  Their motion is therefore denied.

### 11.    Hearsay

Plaintiffs seek a ruling that "no witness may rely upon or refer to hearsay [evidence] as the basis for any factual assertion or opinion."[46] Plaintiffs do not ask the Court to rule that any specific evidence is inadmissible hearsay.  The motion instead effectively asks the Court to apply the Federal Rules of Evidence at trial.  Plaintiffs should rest assured that the Court is aware of the Federal Rules of Evidence.

### 12.    Arrests and/or Criminal Records

Plaintiffs move to exclude any questions regarding plaintiffs' criminal history.[47]  Plaintiffs maintain that none of them has any criminal history.[48]

---

[46]    R. Doc. 61-1 at 8.

[47]    *Id.*

[48]    *Id.*

In responding to this motion, defendants do not suggest that they have evidence of a criminal conviction for any plaintiff that would be admissible under Federal Rule of Evidence 609.[49]

Because there is no indication that there exists evidence of a criminal conviction for any plaintiff that would be admissible, any questions to plaintiffs about whether they have been convicted of a crime would not be relevant under Federal Rule of Evidence 401.  Plaintiffs' motion is therefore granted to the extent it seeks to preclude defendants from asking plaintiffs at trial whether they have been convicted of a crime.

### 13.    Attorney Advances of Court Costs

Plaintiffs move to exclude defendants from referring at trial to any "advances [of] court costs and/or litigation expenses" that plaintiffs' counsel may have paid.[50]  Plaintiffs argue that reference to advances are barred by the collateral source rule and, separately, more prejudicial than probative under Federal Rule of Evidence 403.[51]

Defendants respond to this motion by arguing that attorney-negotiated write-offs of medical expenses are not covered by the collateral source rule.

---

[49]    R. Doc. 76 at 16.
[50]    R. Doc. 61-1 at 11-12.
[51]    *Id.*

As already addressed, that evidence is indeed not covered by the collateral source rule.

But this specific motion addresses plaintiffs' counsel's advances of court costs and other litigation expenses, not only medical expenses. Defendants do not specifically respond to plaintiffs' motion to exclude any reference to these arrangements.[52]  Defendants thus do not address how any evidence of plaintiffs' counsel's advances of court costs or litigation expenses has "any tendency to make a fact more or less probable."  Fed. R. Evid. 401(a).  Unlike the evidence related to plaintiffs' medical expenses, this evidence cannot be used to assess the amount of special damages that should be awarded to plaintiffs.  Because defendants have not shown how this evidence is relevant to an issue at trial, plaintiffs' motion is granted. Defendants are not permitted to refer to plaintiffs' counsel's advances of court costs or litigation expenses during trial.  But this ruling does not apply to evidence of any negotiations or costs associated with plaintiffs' medical expenses, because that evidence is relevant.

---

[52]      R. Doc. 76 at 2-6.

### 14.   *Plaintiffs' Phone Records*

Plaintiffs move to exclude any evidence regarding records of plaintiffs' phone calls.[53]   Plaintiffs argue that their phone records are relevant only to defendants' argument in their counterclaim that plaintiffs staged the accident to defraud them.[54]   Plaintiffs reason that because the Court dismissed defendants' counterclaim, plaintiffs' phone records are not relevant to any issue at trial.

But defendants' argument that plaintiffs staged the collision is very much an issue in this case.  That argument is relevant to defendants' defense that they are not *at fault* for the collision.  Defendants assert that plaintiffs' phone records reveal that on or near the date of the collision, plaintiffs were in contact with other individuals who—defendants suggest—have staged accidents on Interstate 10.[55]   Because these phone records are relevant to an issue at trial, plaintiffs' motion for a blanket ban on this evidence is denied.

But the extent to which plaintiffs' phone records are probative of defendants' defense is intertwined with plaintiffs' pending motion to exclude lay testimony of other collisions.[56]   The Court will address what specific

---

[53]   R. Doc. 61-1 at 13.
[54]   *Id.*
[55]   R. Doc. 76 at 17-18.
[56]   *See* R. Doc. 154.

evidence in plaintiffs' phone records will be admissible at trial in a later ruling on that motion.

### 15. Testimony, Records, or Police Reports of Other Accidents

Plaintiffs move to exclude "testimony, records, and/or police reports of any other accident[]."[57]   Plaintiffs argue that this evidence should be excluded for the same reason evidence of their phone records should be excluded.  Plaintiffs' motion does not refer to any specific police report that they seek to exclude in whole or in part.  As just addressed, evidence of other similar collisions is relevant to defendants' argument that the collision was staged, and that defendants therefore are not at fault for plaintiffs' alleged injuries.  This evidence is therefore relevant to an issue at trial.

To the extent plaintiffs' motion addresses police reports of other collisions, those reports could be admissible under the public records exception to the hearsay rule.  Fed. R. Evid. 803(8)(A)(iii) (the hearsay rule does not apply to "[a] record or statement of a public office if it sets out . . . in a civil case . . . factual findings from a legally authorized investigation"); *Rea v. Wis. Coach Lines, Inc.*, No. 12-1252, 2015 WL 1012936, at *3 (E.D. La. Mar. 5, 2015) (public records exception encompasses police reports).  These reports are admissible unless the sources of information or other

---

[57]   R. Doc. 61-1 at 13-14.

circumstances indicate a lack of trustworthiness.  Fed. R. Evid. 803(8)(B).

In the Fifth Circuit, Rule 803(8)(B) reports are presumed to be trustworthy

and admissible, and it is the burden of the party opposing admission to

demonstrate a lack of trustworthiness.  *Moss v. Ole S. Real Estate, Inc.*, 933

F.2d 1300, 1305 (5th Cir. 1991).  Plaintiffs have not shown how any specific

police report is not sufficiently trustworthy.

The evidence plaintiffs address is thus relevant to an issue at trial and

not *per se* inadmissible hearsay.  Plaintiffs' motion for a blanket ban on this

evidence is therefore denied.  But this evidence is also intertwined with

plaintiffs' pending motion to exclude lay testimony regarding other

collisions.[58]  The Court will address the extent to which this evidence of other

collisions is admissible at trial in conjunction with its order on that motion.

### 16.    Manner in Which Evidentiary Proceedings are Conducted

Plaintiffs request an order that before defendants present any

testimony or documents related to any of plaintiffs' motions *in limine*,

defendants must request a ruling from the Court on the admissibility of the

evidence outside the presence of the jury.  This motion is denied.

Defendants do not need to request a ruling from the Court on the

admissibility of their evidence if the Court has already denied plaintiffs'

---

[58]    *See* R. Doc. 154.

motion to exclude that category of evidence.  Plaintiffs may raise a specific objection at trial that the evidence is not admissible, at which point the Court will rule on the objection (outside the presence of the jury, if necessary). Requiring defendants to first request a ruling from the Court on issues the Court has already addressed would needlessly delay the proceedings and undermine the purpose of pretrial motions *in limine*.

But if defendants want to introduce evidence at trial that is within a category that the Court *has excluded* in this Order, defendants must first request a ruling from the Court that the evidence is not subject to the Court's Order.

### 17.    *Plaintiffs' Prior Unrelated Injuries and Accidents*

Plaintiffs move to exclude evidence regarding (1) any injuries they had before the subject collision, and (2) any prior car accidents in which they were involved.[59]

First, it is well-established that evidence regarding plaintiffs' similar injuries prior to the collision are relevant to the issue of causation.  *See Bonds v. Padlock*, No. 06-7830, 2008 WL 4889794, at *3 (E.D. La. Nov. 10, 2008) (collecting cases).  This is because the evidence addresses whether the subject collision actually caused plaintiffs' injuries.  Plaintiffs cite *Rodrigue*

---

[59]    R. Doc. 61-1 at 14-15.

*v. Wood Group PSN, Incorporated*, for the proposition that "prior injuries are not a defense if [a] plaintiff was asymptomatic and th[e] incident served to aggravate a pre-existing condition."[60]  No. 15-5488, 2016 WL 5390392, at *4 n.5 (E.D. La. Sept. 27, 2016).  The rule articulated by *Rodrigue* is sensible because defendants would still be liable to plaintiffs if they caused plaintiffs to aggravate a pre-existing injury.  *See Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 495 (5th Cir. 2002).  Plaintiffs assert that any pre-existing injuries plaintiffs suffered were asymptomatic prior to the collision.[61]  But plaintiffs do not cite any evidence in support of this statement.  Defendants, by contrast, present evidence that within five months of the collision, Clark complained to his physician that he was suffering back pain.[62] Because the Court cannot determine that all of plaintiffs' pre-existing similar injuries were asymptomatic, plaintiffs' motion for a blanket ban on this evidence is denied.

Second, defendants may not present evidence of plaintiffs' previous accidents to show that plaintiffs, and not Chambers, were at fault for the subject collision.  A party in a tort litigation who wishes to present evidence on an opposing party's previous accidents "must establish relevance by

---

[60]  *Id.*
[61]  *Id.* at 15.
[62]  *See* R. Doc. 76 at 7-8; R. Doc. 76-2.

showing that the incidents involved 'substantially similar' circumstances." *Avondale Indus., Inc. v. Bd. of Com'rs of Port of New Orleans*, No. 94-2786, 1996 WL 280787, at *3 (E.D. La. May 24, 1996) (quoting *Rodriguez v. Crown Equip. Corp.*, 923 F.2d 416, 418 (5th Cir. 1991)).   Defendants have not presented any evidence that plaintiffs' prior accidents are "substantially similar" to the subject collision, such that evidence of those accidents can be used to dispute who was at fault here.

But evidence regarding plaintiffs' prior accidents is relevant to the extent those accidents are the basis for plaintiffs' pre-existing injuries. Defendants assert that each plaintiff was in an automobile accident within two years of the subject collision, and that each plaintiff suffered injuries as a result of those accidents.[63]   This evidence is admissible for the limited purpose of explaining the nature of plaintiffs' pre-existing injuries that are otherwise admissible.  To hold otherwise would constrain defendants' ability to explain to the jury the nature of plaintiffs' pre-existing injuries, which could confuse the jury on a relevant issue.

---

[63]    R. Doc. 76 at 10 (asserting that (1) Clark received medical treatment for injuries sustained in multiple accidents from 2009 to 2016, (2) Harris was in an accident shortly after the subject collision, during the time period in which she was being treated for her alleged injuries stemming from the subject collision, and (3) Thomas was in an automobile accident as recently as 2015).

### B.   Defendants' Omnibus Motion *in limine*

     1.   *Evidence Regarding the Parties' Relative Financial Positions*

     2.   *Evidence Related to Insurance Coverage or Policy Limits*

     3.   *Testimony Related to Plaintiffs' Medical Condition, Work Capacity, or Alleged Disability*

     4.   *Evidence of Plaintiffs' Future Damages Unless Reduced to Present Value*

Plaintiffs do not oppose defendants' first four motions *in limine*.[64] These motions are therefore granted.

     5.   *Duplicative or Cumulative Lay Witnesses or Experts*

Defendants move to exclude any cumulative lay or expert testimony under Federal Rule of Evidence 403. Defendants do not address this issue with any specificity, except to state that plaintiffs could present cumulative lay testimony concerning their "day to day life activities, difficulties, and hardships" since the collision.[65]

Defendants' motion is denied. The Court has limited the parties' total on-the-record time at trial to 8.5 hours.[66] Any cumulative testimony plaintiffs may present is ultimately to their detriment, because the Court will

---

[64] R. Doc. 83-1 at 3.

[65] R. Doc. 47-1 at 5.

[66] *See* R. Doc. 165 at 1.

not extend this limit for either party.  Defendants may also renew their objection at trial to any specific testimony they believe is unduly duplicative.

### 6. Attorney Negotiated Discounts or Charges for Narrative Reports, Conferences, and Other Related Services

This motion has already been addressed in connection with plaintiffs' motion to exclude evidence of their collateral source benefits.

### 7. "Conscience of the Community or "Golden Rule" Arguments

### 8. "Unit of Time" Damage Calculations

Plaintiffs do not object to defendants seventh and eighth motions *in limine*.  The Court therefore grants those motions.

## C.   Plaintiffs' Motion to Exclude Marilyn Pacheco

### 1. Legal Standard

A district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702, which governs the admissibility of expert testimony.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).   Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  To be admissible, Rule 702 requires that (1) the

testimony be based on sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case. *Id.*

In *Daubert v. Merrell Dow Pharmaceuticals, Incorporated*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (clarifying that the *Daubert* gatekeeping obligation applies to all forms of expert testimony). The Court's gatekeeping function involves a two-part inquiry. First, the Court must determine whether the expert testimony is reliable. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Court must assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 590. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* The Court's inquiry into the reliability of expert testimony is flexible and necessarily fact-specific. *See Seatrax, Inc.*, 200 F.3d at 372.

Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence. *See Daubert*, 509 U.S. at 591. This is primarily an inquiry into the relevance of the expert testimony. *See id.*; *see also Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Expert testimony is unnecessary if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

But a court's role as a gatekeeper does not replace the adversary system. *Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

2.   *Discussion*

Plaintiffs move to exclude defendants' medical billing expert, Marilyn Pacheco.[67]  Defendants retained Pacheco to provide an audit of plaintiffs' bills for medical services.[68]  Pacheco's stated objective was to "analyze the charges of past medical services rendered to [each plaintiff] to determine the reasonable market place value for the same services, in the same year, in the same community for all of the past medical treatment provided."[69]  Pacheco concludes that many of plaintiffs' medical bills were significantly greater than the reasonable market place value for the services and treatment plaintiffs received.[70]

The Court finds that Pacheco is qualified to render this expert opinion, and that her methodology is reliable.  The Court finds that her opinion is admissible for the limited purpose of impeaching the credibility of plaintiffs' treating physicians who testify at trial.

a.   *Qualifications*

Pacheco is qualified to render her opinions.  She has earned a Certified Professional Coder certification from the American Academy of Professional

---

[67]   R. Doc. 60.
[68]   R. Doc. 74 at 1.
[69]   *See* R. Doc. 74-1 at 1; R. Doc. 74-2 at 1; R. Doc. 74-3 at 1.
[70]   *Id.*

Coders.[71]  She is also the founder of E&M Billing services, a medical billing service for independent physician practices.[72]  She states that she has over 28 years of experience establishing medical charges, medical billing, collections, pricing, and in third-party payer contract negotiations.[73] Because an expert need only possess a higher degree of knowledge, skill, experience, training, or education than an ordinary person in the subject matter of her testimony, the Court finds that Pacheco is qualified to serve as an expert in medical bill auditing.  *See Taylor v. Diamond Offshore Drilling, Inc.*, No. 06-5318, 2009 WL 961273, at *8 (E.D. La. Apr. 7, 2009) (crediting expert testimony of medical bill auditor who owned a company that assesses the reasonableness of medical bills for insurance companies, attorneys, self-insured companies, and insurance adjustors); *Cummins v. BIC USA, Inc.*, No. 08-19, 2011 WL 2633959, at *5-6 (W.D. Ky. July 5, 2011) (medical bill auditor qualified to render an opinion when she had been employed as a hospital bill auditor for five years).

### b.    *Reliability of Methodology*

Pacheco's methodology for calculating the reasonable market value of the medical services and treatment plaintiffs received is reliable.  Pacheco

---

[71]    *Id.*
[72]    *Id.*
[73]    *Id.*

compiled the billing information for each plaintiff, and then conducted a three-part analysis:

> First, the medical charges were audited utilizing national medical billing and coding rules, standards, and federal regulations. Second, geographic specificity was applied to determine the reasonable marketplace value for the same services within the same community within the same year. Third, a market analysis was conducted of the local medical community for similar services.[74]

Specifically, Pacheco identified the 75th percentile rate of the "national usual and customary value" (U&C value) of plaintiffs' services and treatment.[75] Pacheco then used a "geographic modifier conversion factor" to arrive at the local U&C value for these services and treatment.[76] She compared plaintiffs' medical bills to that local U&C value.[77] To calculate the national U&C value and to determine the proper geographic modifier, Pacheco used the Physicians' Fee Reference.[78] She states that the Physicians' Fee Reference is a database that has "been adopted and commonly used in the medical billing industry for decades."[79]

---

[74]   *See, e.g.*, R. Doc. 74-1 at 71.

[75]   *Id.*

[76]   *Id.*

[77]   *Id.*

[78]   *Id.*

[79]   *Id.*

Other federal courts have found that an expert opinion relying on values calculated from the Physicians' Fee Reference is sufficiently reliable under the Federal Rules of Evidence. *See Incardone v. Royal Caribbean Cruises, Ltd.*, No. 16-20924, 2018 WL 6520934, at *7 (S.D. Fla. Dec. 11, 2018); *Lee v. Fischer*, No. 08-16, 2009 WL 10678390, at *3 (S.D. Ga. July 10, 2009). In addition, Pacheco shows that her methodology has been endorsed as reliable by experts in her field.[80] *See Osburn v. Anchor Labs., Inc.*, 825 F.2d 908 (5th Cir. 1987) (expert's opinion must rely "upon methods that other experts in his field would reasonably rely upon in forming their own" opinions). Pacheco has submitted an affidavit with a letter from Dr. Gerard Anderson, professor of Health Policy and Management at Johns Hopkins University.[81] Dr. Anderson states in the letter that Pacheco's "methodology and data sources are sound and represent the state of the art in determining a reasonable value for physician, hospital, ambulance, ambulatory surgical center, and anesthesia services, as well as drug and supply prices."[82] The Court therefore finds that Pacheco's methodology is reliable.

---

[80] *See* R. Doc. 74-6 at 6.

[81] *Id.*

[82] *Id.*

### c.     *Purpose of testimony*

Although the Court finds that Pacheco is qualified to render her opinion and that she employs a reliable methodology, she can testify at trial only if her opinion assists the trier of fact to understand a fact in issue.  Fed. R. Evid. 702(a).  Pacheco's testimony can assist the trier of fact assess the credibility of plaintiffs' treating physicians who testify.  Her testimony is therefore admissible for that purpose only.

Defendants state that Pacheco's testimony is relevant because it will assist the jury in determining whether plaintiffs' billed medical expenses are "reasonable."[83]   As the Court has already addressed, no evidence is admissible if it is used solely to suggest to the jury that plaintiffs' award of past medical expenses should be reduced because the charges are unreasonably high for the treatment plaintiffs received.  If the jury were to find that plaintiffs' injuries and medical expenses were caused by Chambers's negligence, and that plaintiffs did not incur their treatment in bad faith, the jury would be required to award plaintiffs the full value of their past medical expenses that can be proved by a preponderance of the evidence.  *See Gunn*,

---

[83]     R. Doc. 74 at 4.

801 So. 2d at 564; *Yee*, 25 So. 3d at 877; *Revel*, 664 So. 2d at 661.[84]  Pacheco's expert testimony thus does not assist the trier of fact if it is introduced solely for this purpose.

But Pacheco's testimony is admissible because—like the evidence of plaintiffs' healthcare providers' financial arrangement with TMC and Medport—it can be used to impeach the credibility of plaintiffs' treating physicians who testify.  Plaintiffs explain that their healthcare providers billed TMC and Medport, and that TMC and Medport then paid the providers a discounted amount of that bill.[85]  Plaintiffs also explain that they are still obligated to pay TMC and Medport the full amount of the medical bills initially issued by their healthcare providers.[86]  As the court in *ML*

---

[84]   Defendants argue that Pacheco's expert testimony is relevant because it is equivalent to expert testimony estimating the reasonable value of future medical treatment.  *Id.*  That type of expert testimony is frequently introduced in state and federal courts.  But calculating future medical expenses necessarily entails an estimation of the reasonable value of prospective treatment, which the plaintiff must support through "medical testimony."  *Tamayo v. Am. Nat. Gen. Ins. Co.*, 150 So. 3d 459, 470 (La. App. 5 Cir. 2014).  But that is not the case with past medical expenses, which the plaintiff must instead prove by a preponderance of the evidence by producing the medical bills already issued by the plaintiff's healthcare provider.  Defendants present no evidence that the past medical expenses billed to a plaintiff can be reduced based on an analysis that the amount billed was unreasonably high.  Defendants' suggestion is in fact contrary to Louisiana law.

[85]   R. Doc. 83-1 at 7.

[86]   *Id.* at 7-8.

*Healthcare* explained, evidence of this arrangement can be used to impeach the credibility of the treating physicians because it suggests that the physicians have a financial interest in plaintiffs winning their case. 881 F.3d at 1302. Plaintiffs winning their case increases the likelihood that the physicians will "continue to receive referrals from [the funding company]—and the guaranteed income stream they generate." *Id.*

Pacheco's testimony is relevant to further impeach plaintiffs' treating physicians' credibility because it suggests that this financial arrangement is extremely lucrative to the physicians. For instance, Pacheco states that the Lonseth Interventional Pain Center billed Thomas $66,750 for "office visits and physician fees" for a series of cervical injections from November 17, 2017 to January 9, 2019.[87] But according to Pacheco, the "reasonable value" for these services is only $8,641.47.[88] In addition, Pacheco states that One Spine Institute, LLC billed Harris $37,020 for office visits and surgeon fees for cervical spine fusion surgery.[89] Pacheco explains that the reasonable value for this procedure is $11,843.84.[90]

---

[87]   R. Doc. 74-3 at 4.
[88]   *Id.*
[89]   R. Doc. 74-2 at 4.
[90]   *Id.*

A jury could infer from Pacheco's report that these physicians overcharged plaintiffs in order to satisfy TMC and Medport and continue to receive their referrals—TMC and Medport would after all be entitled to the value of the entire inflated medical bill if plaintiffs prevail at trial.  A jury could also infer that by overcharging plaintiffs, the physicians were guaranteed to receive a windfall.  Even if plaintiffs' physicians offered TMC and Medport a substantial discount on these inflated bills, the physicians' recovery would still likely be greater than what Pacheco states is the reasonable value for their services.  Pacheco's report is therefore relevant to impeach the treating physicians' testimony because it suggests the physicians have a *substantial* financial interest in plaintiffs' winning their case and receiving more referrals from TMC and Medport.

Because Pacheco's report is relevant to further impeach the testifying physicians' credibility, it assists the trier of fact with an issue at trial and is admissible.  *Abel*, 469 U.S. at 52 ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.").

## III.  CONCLUSION

For the foregoing reasons, plaintiffs' omnibus motion *in limine* is DENIED IN PART and GRANTED IN PART, defendants' omnibus motion *in limine* is DENIED IN PART and GRANTED IN PART, and plaintiffs' motion to exclude the expert report and testimony of Marilyn Pacheco is DENIED.

New Orleans, Louisiana, this __26th__ day of April, 2019.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE