UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIERRA THOMAS, ET AL.                                    CIVIL ACTION

VERSUS                                                           NO. 18-4373

RANDALL CHAMBERS, ET AL.                         SECTION "R" (4)

## ORDER AND REASONS

Before the Court is (1) plaintiffs' motion to exclude certain lay testimony,[1] (2) plaintiffs' motions to exclude evidence of plaintiffs' phone records and records from other car accidents,[2] (3) defendants' motion to exclude evidence of settlements in other matters,[3] (4) plaintiffs' motion to exclude video surveillance evidence,[4] (5) defendants' motion to exclude evidence of defendant Randall Chambers's past conviction,[5] and (6) defendants' motion to exclude portions of the accident report and testimony of Officer Jassa Sengha.[6] The Court rules as follows.

## I.     BACKGROUND

This case arises out of a motor vehicle accident in Orleans Parish.[7]  On April 24, 2017, plaintiff Kierra Thomas was allegedly driving an automobile westbound

---

[1]     R. Doc. 154.
[2]     R. Doc. 61.
[3]     R. Doc. 53.
[4]     R. Doc. 56.
[5]     R. Doc. 57.
[6]     R. Doc. 52.
[7]     R. Doc. 1-4.

on Interstate 10 in the right-hand lane with plaintiffs Antoine Clark and Shirley Harris as passengers.[8]  Nonparty Samuel Doyle was also traveling with plaintiffs.[9]  Defendant Randall Chambers was allegedly driving a tractor-trailer next to plaintiffs in the middle lane.[10]  Chambers was driving the tractor-trailer in the course of his employment with defendant God's Way Trucking, LLC.[11]  Plaintiffs allege that Thomas was driving "straight in a cautious fashion" when Chambers negligently attempted to move into the right-hand lane without "keep[ing] a proper lookout."[12]  Chambers's vehicle allegedly struck plaintiffs' vehicle, causing all three plaintiffs to be "violently jolted."[13]  All three plaintiffs allege that they have suffered serious injuries to their necks and backs because of the collision.[14]  They have each received medical treatment for injuries to their cervical and lumbar spines.[15]

On April 6, 2018, plaintiffs filed suit in state court against Chambers, God's Way, and defendant Canal Insurance Company.[16]  Canal Insurance allegedly insured the tractor-trailer Chambers was driving on the day of the collision.[17]

---

[8]     *Id.* at 3 ¶¶ 7-8.
[9]     R. Doc. 175 at 3.
[10]    R. Doc. 1-4 at 3 ¶ 9.
[11]    *Id.* at 2 ¶ 3; R. Doc. 36-4 at 3.
[12]    R. Doc. 1-4 at 3 ¶ 10.
[13]    *Id.* ¶¶ 10-11.
[14]    *Id.* at 5 ¶ 16, 6 ¶¶ 19 & 22.
[15]    *See* R. Doc. 88-3 at 17-21.
[16]    R. Doc. 1-4 at 2 ¶ 3.
[17]    *Id.*

Plaintiffs allege that Chambers's negligence caused their injuries, and that God's Way is liable for their damages as Chambers's employer under the doctrine of respondent superior.[18]

Defendants' primary defense is that plaintiffs intentionally caused the collision in order to recover from defendants in litigation.[19] Defendants state in the Pretrial Order that "plaintiffs' vehicle was traveling at a greater speed than the defendants' vehicle at impact, indicating that plaintiffs sped up and drove into defendants' trailer."[20] Defendants previously filed a counterclaim alleging that plaintiffs' filing of this lawsuit constituted a fraudulent misrepresentation entitling defendants to damages under Louisiana law.[21] The court dismissed the counterclaim because it was incompatible with an assertion that defendants justifiably relied on plaintiffs' alleged misrepresentations, and therefore was not legally cognizable.[22]

---

[18]     *Id.* at 4 ¶¶ 13-14.
[19]     *See* R. Doc. 152 at 11.
[20]     *Id.*
[21]     R. Doc. 13.
[22]     R. Doc. 20.

## II.    DISCUSSION

### A.    Plaintiffs' Motion to Exclude Lay Testimony

Plaintiffs move to exclude eighteen of defendants' proposed lay witnesses from testifying at trial.[23]   The witnesses plaintiffs identify are associated with defendants' argument that plaintiffs staged the collision.  According to defendants, many of the witnesses were involved in strikingly similar collisions on Interstate 10 in 2017, and have some sort of familial or social relationship with plaintiffs.[24] Defendants seek to use these other similar collisions, and plaintiffs' connections to the individuals involved in them, to support their argument that plaintiffs intentionally crashed into Chambers's vehicle to recover damages in litigation.

Plaintiffs argue that these witnesses should be excluded under Federal Rule of Evidence 403.  Under Rule 403, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  Plaintiffs contend that lay testimony on these tangentially-connected collisions would result in "mini-trials" about whether

---

[23]     R. Doc. 154.
[24]     R. Doc. 152 (parties' Pretrial Order, in which defendants list other accidents from 2017 that are factually similar to the subject collision); R. Doc. 22-4 (defendants' proposed amended counterclaim, in which they document the familial and social relationships plaintiffs have with many of the proposed lay witnesses).

they were in fact staged.[25]  According to plaintiffs, the evidence would thus confuse the jury, waste time at trial, and operate to their prejudice.[26]

During the pretrial conference—which took place after plaintiffs filed this motion but before defendants filed their opposition—the Court discussed the admissibility of this lay testimony.  The Court instructed defendants that evidence of nonparties' staging collisions is admissible only if defendants can show that (1) a nonparty admitted that he or she staged another collision in order to bring a tort claim against another party, and (2) there is evidence that that same nonparty communicated with one or more plaintiff in this case around the time of the subject collision.[27]  The Court found that any such evidence would be admissible under Rule 403.  That evidence would not result in mini-trials because there would be direct evidence that the other collision was staged.  And the testimony would be probative of defendants' argument because a conversation with an individual who has admitted to staging collisions around the time of the similar collision at issue suggests that the witness may have spoken with a plaintiff about the scheme.  Following the pretrial conference, defendants now state that they seek to call at trial only eight of the eighteen witnesses to whom plaintiffs originally objected.[28]  The Court addresses each of these eight witnesses below.

---

[25]  R. Doc. 154-1 at 3-4.

[26]  *Id.*

[27]  *See* R. Doc. 165 at 2.

[28]  *See* R. Doc. 175.

### 1. Samuel Doyle

Defendants state that Samuel Doyle is an eyewitness to the collision because he was a passenger in plaintiffs' vehicle.[29]  Defendants further state that they will introduce Doyle's deposition transcript in lieu of live testimony, and that they will redact from the transcript any discussion of Doyle's knowledge of other collisions.[30]  Doyle's testimony is relevant and admissible as to his observations of the collision and plaintiffs before and after the collision.  That testimony is relevant to the questions of fault and plaintiffs' damages.  But because there is no basis for finding his testimony as to other collisions relevant, Doyle may not testify about any other collision.

Whether defendants may use Doyle's deposition transcript in lieu of live testimony depends upon whether Doyle is unavailable at trial under Federal Rule of Evidence 804.  *See* Fed. R. Evid. 804(b)(1) (deposition testimony is admissible over hearsay exception if, *inter alia*, witness is unavailable under Rule 804(a)).  The Court cannot determine at this time whether Doyle's deposition testimony will be admissible under this rule.  Defendants may of course use the deposition transcript for impeachment purposes at trial if Doyle testifies.  In the event defendants introduce the transcript, they are ordered to redact any mention of other collisions.

---

[29]    *Id.* at 3.
[30]    *Id.*

### 2. Tara Blunt

Plaintiffs Clark and Harris both stated during their depositions that they were at Tara Blunt's apartment before the collision.[31] Defendants state that Blunt will testify about plaintiffs' injuries and their "activities and movement prior to and after the accident."[32] Plaintiffs' activities before and after the collision are relevant to the question of plaintiffs' injuries and to defendants' argument that plaintiffs had a plan to intentionally cause the collision. Blunt may offer testimony on these issues because there is evidence Blunt was with plaintiffs on the day of the collision.

### 3. Harry Dorsey

Harry Dorsey was a plaintiff in a personal injury suit in a separate section of this Court.[33] This suit also arose from a motor vehicle collision between a passenger vehicle and a tractor-trailer on Interstate 10. *See Dorsey v. Jamair*, No. 18-6603 (E.D. La. July 10, 2018). On March 12, 2019, Dorsey voluntarily dismissed his claims in that lawsuit.[34] Defendants state that on March 14, 2019, defendants' investigator, Joe Schembre, obtained a recorded statement from Dorsey in which Dorsey admitted to participating in staging the collision in that lawsuit.[35] Plaintiff Harris's phone records indicate that she was in contact with Dorsey on four

---

[31]    R. Doc. 175-1 at 7; R. Doc. 175-2 at 3-4.
[32]    R. Doc. 175 at 3.
[33]    *Id.*; R. Doc. 175-3.
[34]    R. Doc. 175-3.
[35]    R. Doc. 175 at 4.

different days immediately following April 24, 2017, the date of the collision in this case: April 26, April 27, April 28, and May 2, 2017.[36]

Because defendants state that Dorsey has admitted to staging this other collision, his testimony will not require the court to conduct a mini-trial on the circumstances of that collision. And Dorsey's testimony is probative of defendants' argument in this case because there is evidence Dorsey spoke with Harris around the time of the collision. The records of these communications show that there is enough contact between Dorsey and Harris to indicate that Dorsey can offer testimony relevant to defendants' argument. His testimony is therefore probative in this case, and admissible under Rule 403.

### 4.    *Lesdreka Dickson*

Defendants state that Lesdreka Dickson was involved in the same staged collision as Dorsey, and that Dickson similarly dismissed her litigation claim and admitted to defendants' investigator that the collision was staged.[37] But unlike Dorsey, defendants do not have any evidence connecting Dickson to plaintiffs. Defendants state that they are not in possession of any phone records documenting calls between Dickson and plaintiffs.[38]

Because defendants have not shown how Dickson's admission of staging a collision is connected to defendants' allegation that plaintiffs *in this case* staged

---

[36]    *See* R. Doc. 175-5 at 6-10; R. Doc. 175.
[37]    R. Doc. 175 at 3-4.
[38]    *Id.* at 4.

the collision, the probative value of Dickson's testimony is substantially outweighed by its potential prejudice. Dickson's testimony could create an undue inference that plaintiffs staged the collision because of Dickson's acts. But there is insufficient evidence that Dickson knows any plaintiff well, or might have discussed staging collisions with any plaintiff. In addition, because the Court finds that Dorsey may testify at trial, Dickson's testimony would be needlessly cumulative of Dorsey's even if defendants did have evidence connecting her to plaintiffs. The Court therefore grants plaintiffs' motion to exclude testimony from Dickson.

### 5. *Charlotte Jones*

Defendants state that they will call Charlotte Jones to testify about her "personal knowledge of . . . plaintiffs' involvement in staging accidents."[39] Defendants have obtained a recorded statement from Jones, in which she states that plaintiff Harris has been involved in staging other collisions.[40] Jones also stated that Harris has received money from an attorney for helping stage collisions.[41] Jones's recorded statements are probative of defendants' argument because they help to show that Harris has been involved in staging other collisions with trucks for the purpose of filing claims for damages. Defendants assert that many of these other allegedly staged collisions occurred in similar locations on

---

[39] *Id.*
[40] R. Doc. 175-6 at 10-11.
[41] *Id.*

Interstate 10 in 2017.[42]  The similarities in circumstances, location, and time between the subject collision and these other collisions increases the probity of Jones's proposed testimony.  *See United States v. Ramey*, 531 F. App'x 410, 421 (5th Cir. 2013) (probative value of prior acts was heightened by their "general likeness to the charged offenses").

This evidence is also not excludable under Rule 404(b) as inadmissible evidence of prior bad acts.  Fed. R. Evid. 404(b).  Harris's participation in a wider criminal scheme to stage accidents with trucks on Interstate 10 is admissible under Rule 404(b)(2) to show intent, plan, and the absence of mistake or accident.  *Id.* 404(b)(2); *Ramey*, 531 F. App'x at 420-21 (evidence of prior bad acts was admissible under Rule 404(b)(2) because it was relevant to the defendant's "common scheme of defrauding").  Because the probative value of Jones's testimony is not outweighed by any of the Rule 403 factors and is admissible under Rule 404(b)(2), Jones's testimony is admissible at trial.

This ruling does not contradict the Court's instruction following the pretrial conference.  That instruction applies to evidence of other staged collisions in which plaintiffs played no role.  By contrast, Jones's proposed testimony directly implicates Harris in staging other collisions, and is therefore directly probative of defendants' argument.

---

[42]    R. Doc. 152 at 30-31.

### 6. Raymond Riley

The Court finds that Raymond Riley's testimony is admissible at trial, provided defendants lay a sufficient foundation for his testimony before Riley is called. Charlotte Jones states in her recorded statement that Riley is the "head person" involved in recruiting people to participate in staging collisions.[43] As already addressed, Jones states that plaintiff Harris is also involved in recruiting people to participate in these schemes.[44] Jones indicates that Harris is as heavily involved in staging collisions as Riley, and that Harris is paid the same amount as Riley for successfully recruiting someone to participate.[45] According to Jones, the amount Harris and Riley receive is higher than the amount paid to people who are more junior than them.[46]

Jones's recorded statement thus places Harris and Riley at the top of a scheme to recruit individuals to participate in staging collisions. Jones's statement sufficiently connects Riley and Harris to suggest Riley will be able to testify that he has knowledge of Harris staging other collisions. The other allegedly staged collisions defendants cite were similar to the subject collision.[47] As already

---

[43] R. Doc. 175-6 at 2-3 (Jones stating that "Top is the head person," and that Riley goes by the nickname "Top").

[44] *Id.* at 11 ("Jones: Listen. You Top. All Top you get a thousand dollars. . . . For bringing me. I get 500. I'm just an outsider. For Shirley Harris and the [T]op the same, they both get a thousand. . . . [Interviewer:] Is Shirley Harris at the same level as Top? Jones: Yes.").

[45] *Id.*

[46] *Id.*

[47] R. Doc. 152 at 30-31.

addressed, these similarities indicate that Riley's proposed testimony is directly probative of defendants' argument here. That probative value is not outweighed by any of the Rule 403 factors. Finally, Riley's testimony is admissible under Rule 404(b)(2) for the same reason Jones's testimony is admissible.

But Riley's testimony will be admissible only if defendants first establish at trial—with admissible evidence—that both Harris and Riley are principle figures in recruiting individuals to participate in staging collisions.[48] Only when that factual foundation has been established will the Court permit Riley to testify.[49]

### 7. *Cornelius Garrison*

Harris's phone records indicate that she communicated with Cornelius Garrison several times on the day of the collision and the following two days.[50] In particular, the phone records show several text messages with Garrison and multiple inbound calls from Garrison within an hour of the time Harris testified the collision occurred.[51] Garrison may testify at trial regarding his communications with Harris on the day of the collision because that testimony is generally probative of plaintiffs' negligence and damages claims.

---

[48] Jones's recorded statement is not sufficient to alone lay this foundation at trial because her statements in the transcript are inadmissible hearsay.

[49] Like Charlotte Jones's proposed testimony, the Court's instruction following the pretrial conference does not apply to Riley's testimony about Harris's direct involvement in staging other collisions.

[50] R. Doc. 175-5 at 2-4.

[51] *Id.* at 4; R. Doc. 175-1 at 6.

Defendants present no evidence that Garrison has been involved in staging other collisions.[52] His testimony is therefore limited to his observations of plaintiffs on the day of the collision through his communications with Harris. He may not testify about any other collisions in which no plaintiff was involved.

### 8. Joe Schembre

Joe Schembre is the investigator who obtained the recorded statements of Dorsey, Dickson, and Jones.[53] Defendants state that Schembre's testimony is relevant to "issues concerning communications with witnesses."[54] To the extent Schembre will simply recount what other witnesses told him, his testimony would be inadmissible hearsay evidence. But Schembre may testify that he interviewed the witnesses, and he may explain how and when the interviews were conducted. Schembre's observations of defendants' witnesses may also be relevant and not hearsay. Finally, Schembre may testify for impeachment purposes, consistent with Federal Rule of Evidence 613(b). Fed. R. Evid. 613(b) ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 763-64 (5th Cir. 2008) (district court

---

[52] According to defendants, Lesdreka Dickson stated that on the day of her staged collision, Riley spoke to Cornelius Garrison. R. Doc. 175 at 4. But defendants do not present any evidence that Garrison was involved in staging that collision.

[53] R. Doc. 175 at 6.

[54] *Id.*

did not err in permitting testimony of law enforcement officer as "extrinsic evidence" pursuant to Rule 613).

### B.    Plaintiffs' Phone Records and Records of Other Collisions

Plaintiffs previously moved to exclude any evidence of their phone records.[55] The Court denied plaintiffs' proposed blanket ban, but deferred ruling on which phone records would be admissible until it considered plaintiffs' motion to exclude defendants' lay testimony related to other collisions.[56]    The Court finds that Harris's phone records showing she communicated with Harry Dorsey and Cornelius Garrison from April 24, 2017 to May 2, 2017 are admissible, consistent with the Court's discussion in the previous section.  If defendants wish to include any other evidence of plaintiffs' phone records, they must provide written briefing on the issue no later than midnight on the day before the proposed offer. Defendants shall explain in the briefing how the evidence is probative of an issue at trial, consistent with Rule 403 and the Court's discussion in this Order.

The Court also previously deferred ruling on plaintiffs' motion to exclude "testimony, records, and/or police reports of any other accident[]."[57]   In their opposition to plaintiffs' motion to exclude lay testimony, defendants seek to introduce testimony about only one other specific collision: the collision involving Harry Dorsey and Lesdreka Dickson.[58]  This is therefore  the only collision still

---

[55]    R. Doc. 61-1 at 13.
[56]    R. Doc. 168 at 25-26.
[57]    *Id.* at 26-27.
[58]    R. Doc. 175 at 4-5.

applicable to this motion. Because the Court has found that Dorsey's testimony about the other collision is admissible under Rule 403, it also finds that records and police reports related to that collision are relevant. At trial, defendants may introduce these documents provided they do not contain inadmissible hearsay.

### C. Defendants' Motion to Exclude Evidence of Settlements in Other Matters

Defendants move to exclude evidence of settlements in the other cases that defendants specifically allege were staged.[59] This motion is now applicable to only the litigation for the collision involving Harry Dorsey, because that is the only other collision defendants specifically mention in their briefs that the Court has deemed can be introduced at trial. Defendants argue that evidence of other settlements is barred by Federal Rule of Evidence 408(a).[60]

Rule 408(a) provides:

Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

---

[59]    R. Doc. 53.
[60]    R. Doc. 53-1 at 5-7.

Fed. R. Evid. 408(a).  This rule is intended to encourage the compromise and settlement of disputes, in part by ensuring freedom of communication with respect to compromise negotiations.  *U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949, 956 (5th Cir. 1990).  Rule 408(b) provides that the Court can nonetheless admit any such evidence "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation."  Fed. R. Evid. 408(b).  "Whether to admit evidence for another purpose is within the discretion of the trial court."  *Belton v. Fibreboard Corp.*, 724 F.3d 500, 505 (5th Cir. 1984).

The parties do not address whether Rule 408(a) applies to evidence of settlements involving completely different parties and claims.  But that is the issue defendants present in their motion because no plaintiff was involved in the Dorsey litigation.[61]  Defendants cite to *Branch v. Fidelity Casualty Company*, 783 F.2d 1289 (5th Cir. 1986), and *Kennon v. Slipstreamer, Incorporated*, 794 F.2d 1067 (5th Cir. 1986), but neither case is on point.  In both cases, the Fifth Circuit held that Rule 408 barred evidence of settlements between the plaintiff and certain defendants in a multi-defendant litigation, when the evidence was introduced at trial to the prejudice of a remaining party.  *Branch*, 783 F.2d at 1294; *Kennon*, 794 F.2d at 1069-70.  In *Branch*, the court noted that the purpose of Rule 408(a) extends to situations in which the evidence of a settlement is used "to prejudice a

---

[61]    *See* R. Doc. 152 at 30.

separate and discrete claim" from the one involved in the settlement negotiations. *Branch*, 783 F.2d at 1291 & 1294 ("The spectre of a subsequent use to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent."). This statement is arguably at odds with other Circuits' interpretations of Rule 408(a). *See Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) (Rule 408(a) does not bar evidence "related to settlement discussions that involved a different claim than the one at issue in the current trial"); *Dahlgreen v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 699-700 (8th Cir. 2008) ("Rule 408 does not require the exclusion of evidence regarding settlement of a claim different from the one litigated, though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408." (quoting *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997)).

But even if Rule 408(a) were to apply to evidence of these other settlements, the evidence is admissible under Rule 408(b) as rebuttal evidence. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005) (noting that evidence of settlements "has been admitted by courts for additional purposes other than establishing liability, including for purposes of rebuttal . . ."); *Fick v. Exxon Mobil Corp.*, No 13-6608, 2016 WL 81716, at *3 (E.D. La. Jan. 7, 2016) (same). In the context of this trial, plaintiffs would not be introducing this evidence to prove, in the first instance, that the claims in another case were valid. They would instead introduce the evidence to rebut defendants' suggestion that the other collision was

staged. Plaintiffs may use this evidence for that purpose under Rule 408(b). *Id.* Further, the Seventh Circuit in *Zurich* noted that when the district court uses its wide discretion to determine whether Rule 408 evidence is introduced for a proper purpose, courts "should consider the spirit and purpose of the rule and decide whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations." *Zurich*, 417 F.3d at 689. The admission of this evidence does not undercut the purpose of Rule 408(a). Admission under these circumstances does not create a disincentive for parties to engage in settlement negotiations, because the evidence is not being used to the prejudice of any of the parties in the case in which the settlement negotiations took place.

In all, the Court finds that given the particular circumstances of this case, plaintiffs may introduce evidence of a settlement, if any, in the case discussed during Harry Dorsey's testimony. This evidence is especially appropriate given that the Court will allow defendants to present evidence of Dorsey's collision and resulting litigation claim in the first instance.

### D. Plaintiffs' Motion to Exclude Video Surveillance Evidence and Request for Sanctions

Plaintiffs move to exclude defendants from introducing surveillance video at trial.[62] Defendants retained the services of nonparty Photofax, Inc., to conduct video surveillance of plaintiffs Thomas and Clark in August and September 2018.[63]

---

[62] R. Doc. 56.
[63] R. Doc. 71 at 2.

Defendants state that one video of Clark from August 21, 2018 shows him lifting a lawn mower and placing it into his truck.[64] This evidence is highly relevant to Clark's claims for physical pain and suffering damages and future medical expenses, as well as his credibility as a witness. These videos are therefore relevant under Federal Rule of Evidence 401, and not more prejudicial than probative under Rule 403. *See Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008) (district court did not abuse its discretion under Rule 403 in allowing video surveillance evidence that disputed the plaintiff's evidence regarding his "post-accident quality of life"); *Menges v. Cliffs Drilling Co.*, No. 99-2159, 2000 WL 765083, at *2 (E.D. La. June 12, 2000) (admitting surveillance video evidence that undermined the plaintiff's assertions of physical pain and disability).

Plaintiffs primarily argue that the surveillance videos should be excluded because defendants failed to timely disclose them.[65] This argument is meritless.

Defendant Chambers responded to plaintiffs' interrogatories and requests for production on August 17, 2018.[66] Chambers identified as potential witnesses "[a]ny and all individuals who may have or will secure surveillance of any plaintiffs."[67] He also identified as an exhibit "[a]ny and all surveillance secured at

---

[64]    *Id.* at 7.
[65]    R. Doc. 56-1.
[66]    R. Doc. 71-1.
[67]    *Id.* at 3.

any point."[68] At the time of Chambers's response, Photofax was in the midst of surveilling Thomas and Clark.[69] On August 28, 2018, God's Way responded to plaintiffs' interrogatories and requests for production.[70] God's Way identified the same potential witnesses and exhibits.[71] God's Way also disclosed in these responses that surveillance of Clark and Thomas had been conducted.[72]

Defendants state that they did not receive the surveillance videos from Photofax until February 25, 2019.[73] Defendants produced the videos to plaintiffs that same day, which was three weeks before the March 18, 2019 discovery deadline.[74] Plaintiffs filed the instant motion on February 25, 2019, as well.[75] On February 26, 2019, defendants' counsel disclosed to plaintiffs' counsel the name of the Photofax investigator who conducted the surveillance, and inquired whether plaintiffs would like to schedule a deposition before the March 18 discovery deadline.[76] Plaintiffs' counsel declined to schedule a deposition, and responded that she was "just moving to strike him instead."[77]

The record thus indicates plaintiffs were advised as early as August 2018 that defendants were conducting surveillance of Thomas and Clark. The record also

---

[68] *Id.* at 6.
[69] *See* R. Doc. 71 at 2.
[70] R. Doc. 71-2.
[71] *Id.* at 3, 9.
[72] *Id.* at 11.
[73] R. Doc. 71 at 3.
[74] R. Doc. 71-5 at 3.
[75] R. Doc. 56.
[76] R. Doc. 71-6 at 1.
[77] *Id.*

shows that defendants produced the surveillance video before the discovery deadline and offered to schedule a timely deposition of the individual who conducted the surveillance. Defendants' disclosures are consistent with the Court's Scheduling Order. Plaintiffs have not been prejudiced by defendants' disclosures, especially because the Court has since continued the trial without date. In all, because defendants produced these videos in advance of the discovery deadline and made their witness available for a deposition before the deadline, plaintiffs' motion to strike and for sanctions is meritless. *See Baker*, 536 F.3d at 368-69 (noting that not even surveillance tape "disclosed after the discovery cutoff, but before trial, is automatically inadmissible"). The motion is denied.

### E. Defendants' Motion to Exclude Evidence of Past Convictions

Defendants move to exclude evidence of Chambers's past felony conviction. The motion is denied.

On May 26, 2009, Chambers pleaded guilty to one count of conspiracy under 18 U.S.C. § 371. *See United States v. Chambers*, No. 07-31 (S.D. Ga. May 29, 2009). The Judgment of Chambers's sentence described the nature of his offense as

> [c]onspiracy to alter and remove vehicle identification numbers, to traffic in motor vehicles with altered vehicle identification numbers, to sell and receive stolen motor vehicles, and to possess and counterfeit forged state securities with the intent to defraud.

*Id.*[78]  Chambers was sentenced to a term of 18 months imprisonment and three years of supervised release.  *Id.*

Under Federal Rule of Evidence 609(a), in a civil case, evidence of a criminal conviction for a crime punishable by death or by imprisonment for more than one year "must be admitted, subject to Rule 403."  Fed. R. Evid. 609(a)(1)(A).  Under Rule 609(b), "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," evidence of the conviction is admissible only if: "(1) its probative value, supported by facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  Fed. R. Evid. 609(b).

---

[78]  In their briefs, the parties name the statute under which Chambers was convicted, the jurisdiction in which he was sentenced, the terms of imprisonment and supervised release, and his date of conviction.  R. Doc. 121 at 2.  But neither party introduces into the record Chambers's judgment from the Southern District of Georgia, which describes the nature of his offense. The Court may nonetheless take judicial notice of the record in Chambers's criminal case.  *See Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 408 n. 7 (5th Cir. 2004) ("We may take judicial notice of another court's judicial action. . . . [T]he fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice."); Charles A. Wright & Arthur R. Miller, 21B Fed. Prac. & Proc. § 5106.4 (2d ed. & Supp. 2012) (courts and commentators "generally agree that courts can take judicial notice of court records under Rule 201(b)(2)"); Fed. R. Evid. 201(b) (providing that a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

It is not entirely clear whether the restriction in Rule 609(b) applies to this motion.[79] Trial was originally scheduled to begin on April 29, 2019, which would have been within ten years of Chambers's May 26, 2009 conviction.[80] But the Court has continued trial and has not set a new date.[81] Trial will not start until after the ten-year anniversary of Chambers's conviction. Rule 609(b) is implicated only if more than ten years have passed from Chambers's "release of confinement." *Id.* The parties have not provided any information regarding the date Chambers was released from confinement. The Court therefore cannot at this time determine whether trial will commence fewer than ten years from the date Chambers was released.

But this uncertainty is irrelevant, because the Court finds that even if Rule 609(b) were to apply, evidence of Chambers's 2009 conviction would nonetheless be admissible. In weighing the probative value versus any prejudicial effect of admitting prior convictions under Rule 609(b), courts consider the following factors:

(1) The nature [impeachment value] of the crime.

(2) The time of conviction.

---

[79] Defendants conceded in their motion that Rule 609(b) does not apply because Chambers's conviction was within ten years of the original trial date. R. Doc. 121 at 2. But defendants filed their motion prior to the Court continuing trial, so their concession does not cure the ambiguity the Court faces.

[80] R. Doc. 9.

[81] R. Doc. 173.

(3) The similarity between the past crime and the charged crime.

(4) The importance of [the witness's] testimony.

(5) The centrality of the credibility testimony.

*United States v. Acosta*, 763 F.2d 671, 695 n.30 (5th Cir. 1985) (quoting *United States v. Hawley*, 554 F.2d 50, 53 n. 5 (2d Cir. 1977)). The third factor is not applicable here, because Chambers is not a criminal defendant charged with a crime. *See United States v. Bates*, No. 13-66, 2015 WL 3466188, at *2 (E.D. La. June 1, 2015) (third factor not relevant where the relevant witness was not a criminal defendant charged with a crime). On balance, the four applicable factors weigh in favor of admission.

As to the first factor, the impeachment value of the prior crimes, the Fifth Circuit has held that "prior crimes involving deliberate and carefully premeditated intent such as fraud and forgery are far more likely to have probative value with respect to later acts than prior crimes involving a quickly and spontaneously formed intent." *United States v. Cohen*, 544 F.2d 781, 785 (5th Cir. 1977) (quoting *United States v. San Martin*, 505 F.2d 918, 923 (5th Cir. 1974)). "[S]uch crimes are more probative on the issue of propensity to lie under oath than more violent crimes which do not involve dishonesty." *Id.* Here, Chambers was convicted for taking part in a criminal auto-theft scheme, which involved "possess[ing] and counterfeit[ing] forged state securities with the intent to defraud." *Chambers*, No. 07-31 (S.D. Ga. May 29, 2009). His offense was not a spontaneous violent act, but a premeditated scheme to forge vehicle identification information to traffic in

stolen goods.  Chambers's conviction therefore has significant impeachment value on his capacity for truthfulness.

As to the second factor, the time of conviction, if it proves to be the case that Chambers was released from confinement more than ten years from the date of trial, it likely would not be by much.  The Court thus finds that this factor is not determinative.

The fourth and fifth factors—the importance of the witness's testimony and the centrality of the credibility testimony—weigh heavily in favor of admission. This case is about whether Chambers negligently caused the collision or whether plaintiffs intentionally caused the collision to recover damages in litigation. Chambers and plaintiffs are the essential witnesses on this question.  Whether the jury credits Chambers's or plaintiffs' testimony is therefore critically important. *See Bates*, 2015 WL 3466188, at *2 (noting that when "the jury essentially has to choose between one version of events presented" by the witness with a prior conviction and the opposing party's witnesses, the fourth and fifth factors weigh in favor of admission).  Chambers's credibility is especially important in these circumstances because he is accusing plaintiffs of fraudulent behavior to exculpate himself from civil liability.  When the crux of a case is a credibility issue, other courts have recognized that evidence of prior convictions takes on "special significance." *United States v. Pritchard*, 973 F.2d 905, 909 (11th Cir. 1992); *see also United States v. Brown*, 603 F.2d 1022 (1st Cir. 1979).

The Court thus finds that, in the event Rule 609(b) were to apply to Chambers's prior conspiracy conviction, evidence of the conviction is admissible because its probative value substantially outweighs its prejudicial effect. In the alternative, if event Rule 609(b) is not applicable at trial, Chambers's conspiracy conviction is admissible under Rule 609(a)(1)(A) for the same reasons described herein. *See* Fed. R. Evid. 609(a)(1)(A) (evidence of a conviction punishable by imprisonment for more than one year must be admitted in a civil case, subject to Rule 403).

On cross examination, to attack Chambers's credibility, plaintiffs are permitted to establish only "the nature" of the crime charged, the date and time of conviction, and the punishment Chambers received. *See Veals v. Edison Chouest Offshore, LLC*, No. 06-3776, 2007 WL 3237171, at *2 (E.D. La. Oct. 31, 2007) (citing *Beaudine v. United States*, 368 F.2d 417, 421-22 (5th Cir. 1966)); *Gaudin v. Shell Oil Co.*, 132 F.R.D. 178, 179 (E.D. La. 1990). In this context, the "nature" of Chambers's offense means how the offense is described in the Judgment in Chambers's criminal case. *See Chambers*, No. 07-31 (S.D. Ga. May 29, 2009) ("Conspiracy to alter and remove vehicle identification numbers, to traffic in motor vehicles with altered vehicle identification numbers, to sell and receive stolen motor vehicles, and to possess and counterfeit forged state securities with the intent to defraud."). Plaintiffs may not inquire into any other details of Chambers's conviction. *See Gaudin*, 132 F.R.D. at 179.

### F. Defendants' Motion to Exclude Portions of Accident Report

Defendants move to exclude Officer Jassa Sengha—the New Orleans Police Department (NOPD) officer who arrived at the scene and completed a vehicle crash report—from offering any opinion on the cause of the collision or which party was at fault.[82] Defendants also move to redact any portion of the crash report that contains inadmissible opinion testimony.[83]

Federal Rule of Evidence 701, which governs lay opinions, provides that such opinions are admissible when they are "(1) rationally based on the perception of the witness, (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Police officers' opinions as to the cause of an automobile accident formed by viewing subsequent evidence at the scene are excluded under Rule 701, because such opinions require scientific, technical, or other specialized knowledge. *See Duhon v. Marceaux*, 33 F. App'x 703, 2002 WL 432383, at *4 (5th Cir. 2002); *Rea v. Wis. Coach Lines, Inc.*, No. 12-1252, 2015 WL 1012936, *3 (E.D. La. Mar. 5, 2015). It is undisputed that Officer Sengha is not qualified to testify as an expert in accident reconstruction and that he did not witness the accident. Officer Sengha therefore cannot offer opinion testimony on the cause of the collision or who was at fault.

---

[82] R. Doc. 52-1 at 2-3.
[83] *Id.* at 3-4.

The parties in fact do not dispute that Officer Sengha cannot offer these opinions at trial. They instead dispute the extent to which the accident crash report contains any inadmissible opinions and must be redacted.[84] The parties specifically address Officer Sengha's statements in the narrative section of the report:

> Driver of vehicle 1[85] stated he never observed his trailer hit vehicle 2. Driver of vehicle 1 stated he was in middle lane at the time of the accident according to driver vehicle 2's[86] statement. Driver of vehicle 2 stated she was in the right lane when vehicle 1 made a quick lane change and hit the rear tire of the trailer being driven by driver of vehicle 1. Officer Sengha issued NOPD item slips to both drivers. Officer Sengha observed a very faint trail of white paint on the last rear tire of the trailer of vehicle 1. Officer Sengha did not issue any citations due to conflicting statements. Officer Sengha's body worn camera and in-car camera were activated prior to arrival and for the duration of the investigation.

Each of these statements is admissible lay opinion testimony because they are statements of fact as to what Officer Sengha observed at the scene of the collision. Defendants argue that Officer Sengha's statement that he observed "a very faint trail of white paint on the last rear tire" of Chambers's vehicle is inadmissible opinion testimony regarding causation. But this is simply a

---

[84] *See* R. Doc. 86-1 at 2; R. Doc. 117. The parties do not dispute that the accident crash report as a whole is admissible under the exception to the hearsay rules for a record or statement from a public office in a legally authorized investigation. *See* Fed. R. Evid. 803(8)(A)(iii) (the hearsay rule does not apply to "[a] record or statement of a public office if it sets out . . . in a civil case . . . factual findings from a legally authorized investigation").

[85] "Vehicle 1" in Officer Sengha's report denotes Chambers's tractor-trailer.

[86] "Vehicle 2" in Officer Sengha's report denotes plaintiffs' vehicle.

statement of what Officer Sengha observed at the scene, and is therefore admissible lay opinion testimony. At trial Officer Sengha cannot draw any conclusions from this observation about who caused the collision, but his observation itself is admissible. Finally, the statements in the report attributed to Chambers and plaintiffs are potentially admissible under Rule 801(d)(2), depending upon which party offers the crash report into evidence. *See* Fed. R. Evid. 801(d)(2) (opposing party's statement is not hearsay). They are therefore not *per se* inadmissible hearsay.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' motion to exclude certain lay testimony is GRANTED IN PART and DENIED IN PART. Defendants' motion to exclude evidence of settlements in other matters is DENIED. Plaintiffs' motion to exclude video surveillance evidence is DENIED. Defendants' motion to exclude evidence of Chambers's past convictions is DENIED. And defendants' motion to exclude portions of the accident report and testimony of Officer Sengha is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this __6th__ day of May, 2019.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE