UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIERRA THOMAS, ET AL.                          CIVIL ACTION

VERSUS                                         NO. 18-4373

RANDALL CHAMBERS, ET AL.                       SECTION "R" (4)

## ORDER AND REASONS

Before the Court is (1) defendants' objection to the Magistrate Judge's order denying their motion for leave to file a supplemental and amending answer,[1] (2) plaintiffs' motion for relief from the Court's order,[2] and (3) plaintiffs' motion to extend the deadline to depose certain individuals.[3] Because defendants' motion for leave to amend their answer satisfies the factors in Federal Rules of Civil Procedure 16(b) and 15(a), the Court sets aside the Magistrate Judge's order pursuant to Rule 72(a). The Court also denies both of plaintiffs' motions.

---

[1]     R. Doc. 169.
[2]     R. Doc. 208.
[3]     R. Doc. 210.

## I.    BACKGROUND

On April 6, 2018, plaintiffs filed this lawsuit against defendants Randall Chambers, God's Way Trucking, LLC, and Canal Insurance Company, for injuries plaintiffs allegedly sustained in a motor vehicle accident on Interstate 10.[4]  Plaintiffs allege that Chambers's negligence caused their injuries, and that God's Way is liable for their damages as Chambers's employer under the doctrine of *respondent superior*.[5]  Canal Insurance allegedly insured the tractor-trailer Chambers was driving on the day of the collision.[6]

On April 30, 2018, defendants filed an answer to the complaint.[7] Defendants asserted in this answer that "[a]ll alleged damages and/or injuries made the subject of this litigation were proximately caused solely and entirely by the negligence" of plaintiffs.[8]

On July 2, 2018, defendants filed a counterclaim alleging that plaintiffs' filing of this lawsuit constituted a fraudulent misrepresentation entitling defendants to damages under Louisiana law.[9]  Defendants alleged

---

[4]    R. Doc. 1-4.
[5]    *Id.* at 4 ¶¶ 13-14.
[6]    *Id.*
[7]    R. Doc. 4.
[8]    *Id.* at 4.
[9]    R. Doc. 13.

that plaintiffs intentionally caused the collision "and/or" suffered no injuries, and that they filed a false complaint in order to recover damages in litigation.[10]  On October 24, 2018, the court dismissed the counterclaim because (1) it was incompatible with an assertion that defendants relied on plaintiffs' alleged misrepresentations, and therefore was not legally cognizable, and (2) it failed to satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).[11]

Two days after the Court issued this order, defendants moved for leave to file a supplemental and amending counterclaim.[12]  The proposed amended counterclaim explained in greater detail the basis for their fraud claim.[13] Defendants asserted (1) that Chambers "did not experience any type of impact consistent with a motor vehicle accident," (2) that Chambers only merged into the right lane after "an unknown third vehicle swerved directly in front of him into his lane 2-3 times," and (3) that shortly after merging, plaintiffs "flagged" Chambers down and indicated that they had been in a collision.[14]  Defendants further alleged that there is circumstantial evidence

---

[10]    *Id.* at 2 ¶ 4.
[11]    R. Doc. 20.
[12]    R. Doc. 22.
[13]    *See* R. Doc. 22-4.
[14]    *Id.* at 2 ¶ 3.

supporting their allegation that plaintiffs' claims are fabricated.[15] Defendants asserted that plaintiffs have social or familial ties to the plaintiffs in approximately fifteen other lawsuits involving similar collisions on Interstate 10.[16] The Court denied defendants leave to file the amended counterclaim, because it did not remedy the fact that their claim for fraud was not legally cognizable under Louisiana law.[17]

On January 14, 2019, defendants filed a motion for leave to file a supplemental and amending answer.[18] In their proposed amended answer, defendants assert that "[a]ll alleged damages and/or injuries made the subject of this litigation were proximately caused solely and entirely by the intentional acts and/or negligence" of plaintiffs.[19] Defendants explain:

> Plaintiffs were aware of other similar claims brought by or on behalf their neighbors, relatives, and associates involving disputed liability sideswipe type collisions with commercial vehicles. Plaintiffs conspired to cause and/or stage this incident. On or about April 24, 2017, Plaintiffs did in fact cause and/or stage this accident. They are now presenting a fraudulent claim arising out of the subject incident.[20]

---

[15]   *Id.* at 2-9.
[16]   *Id.* Defendants generally assert that the individuals involved in these other accidents are either plaintiffs' relatives or "associates." *Id.*
[17]   R. Doc. 37.
[18]   R. Doc. 33.
[19]   R. Doc. 33-4 at 4.
[20]   *Id.* at 9.

Defendants alternatively assert that in the event plaintiffs establish that Chambers acted negligently, plaintiffs' "intentional acts . . . proximately contributed to the occurrence of the alleged accident" and plaintiffs' damages.[21] Defendants' motion was referred to Magistrate Judge Karen Wells Roby.[22] On April 5, 2019, Magistrate Judge Roby denied defendants' motion.[23] She concluded that permitting the amendment would be futile, because defendants' proposed amended answer did not state the affirmative defense of fraud with enough particularity under Rule 9(b).[24]

The discovery deadline, and the date by when the parties had to file their pretrial witness and exhibits lists, was March 18, 2019.[25] On April 12, 2019, plaintiffs moved to exclude eighteen of the witnesses that defendants included on their witness list.[26] For many of these eighteen witnesses, defendants had stated that they would testify to the following:

> Social media postings; social media friends, relationships with people involved in similar accidents in New Orleans; communications with and/or contact with Plaintiffs, before or after the alleged accident; and information regarding common

---

[21] *Id.* at 5-7.
[22] *See* R. Doc. 33.
[23] R. Doc. 147 at 7-8.
[24] *Id.*
[25] R. Doc. 9.
[26] *See* R. Doc. 154-1.

facts and direct connections to similar accidents in New Orleans.[27]

Plaintiffs argued that testimony regarding other allegedly staged collisions was not relevant because the Court had dismissed defendants' counterclaim for fraud, and the testimony was therefore more prejudicial than probative under Federal Rule of Evidence 403.[28]

During the pretrial conference—which took place on April 16, 2019—the Court discussed the admissibility of this lay testimony. The Court instructed defendants that evidence of nonparties' staging collisions is admissible only if defendants can show that (1) a nonparty admitted that he or she staged another collision in order to bring a tort claim against another party, and (2) there is evidence that that same nonparty communicated with one or more plaintiff in this case around the time of the subject collision.[29] Defendants then filed an opposition to plaintiffs' motion, and in response to the Court's order dropped all but eight of the witnesses they had previously proposed.[30]

---

[27] R. Doc. 127 at 2-7.
[28] R. Doc. 154-1 at 1-2.
[29] *See* R. Doc. 165 at 2.
[30] *See* R. Doc. 175.

On April 18, 2019, the Court continued trial and ordered the parties to appear at a status conference.[31]  The Court explained that it had learned of a federal criminal investigation in the Eastern District of Louisiana that may be connected to this case, and ordered the parties to be prepared to discuss whether the case should be stayed pending the outcome of that investigation.[32]  The Court also stated that "fact and expert discovery" were closed, and that "[t]here will be no further motion practice of any kind unless ordered by the Court."[33]

On May 6, 2019, the Court ruled on plaintiffs' motion to exclude lay testimony.[34]  As relevant for the purposes of the instant motions, the Court ruled that the following witnesses could testify to at least some issues at trial: (1) Tara Blunt, (2) Harry Dorsey, (3) Charlotte Jones, (4) Raymond Riley, (5) Cornelius Green, and (6) Joe Schembre, an investigator with J.S. Investigations.[35]  Of these witnesses, only Harry Dorsey was permitted to testify as to the staging of other collisions not involving plaintiffs.[36]  The other witnesses were allowed to testify because they have either (1) direct

---

[31]    R. Doc. 173.
[32]    *Id.*
[33]    *Id.* at 2.
[34]    *See* R. Doc. 196.
[35]    *Id.* at 7-12.
[36]    *See id.*

knowledge of plaintiffs' activities or movements on the day of the collision—such that they can testify as to plaintiffs' claims for damages and whether they intentionally caused this specific collision—(2) direct knowledge that plaintiffs themselves have staged other collisions, or (3) had conducted interviews with other witnesses who were permitted to testify.[37]

There are presently three motions before the Court. First, defendants object to Magistrate Judge Roby's order denying them leave to file their amended answer.[38] Second, plaintiffs move for relief from the Court's order permitting these lay witnesses to testify at trial.[39] Third, plaintiffs move to extend the discovery deadline so that they can conduct depositions of (1) Tara Blunt, (2) Harry Dorsey, (3) Charlotte Jones, (4) Raymond Riley, (5) Cornelius Garrison, (6) a Rule 30(b)(6) deposition of J.S. Investigations, investigator Joe Schembre's corporate entity, (7) Robert Weber, and (8) Marlene Kennedy.[40] Neither Weber nor Kennedy are witnesses that defendants have indicated will be called at trial.

---

[37] *See id.*
[38] R. Doc. 169.
[39] R. Doc. 208.
[40] R. Doc. 210.

## II.    LEGAL STANDARD

A party seeking to amend its pleading after the deadline set by the Court must show "good cause" for the amendment under Federal Rule of Civil Procedure 16(b).  *S&W Enters., LLC. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 53-36 (5th Cir. 2003).  "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"  *Id.* at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).  Whether to grant or deny a continuance is within the sound discretion of the trial court.  *United States v. Alix*, 86 F.3d 429, 434 (5th Cir. 1996).  The Court's "judgment range is exceedingly wide" when making scheduling decisions, for it "must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's."  *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (quoting *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549-50 (5th Cir. 2000)).  Courts specifically consider "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice."  *S&W Enters.*, 315 F.3d at 536

(quoting *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)) (alternations in original).

If the Court finds that plaintiff has demonstrated good cause to modify the scheduling order, it then applies the more liberal standard of Federal Rule of Civil Procedure 15(a) to determine whether to grant the motion. *Id.* Under Rule 15(a), the Court "freely give[s] leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend, however, "is by no means automatic." *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994). The Court considers multiple factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182.

## III.  DISCUSSION

### A.    Objection to Order Denying Leave to Amend

The Court must set aside the Magistrate Judge's order if it is "found to be clearly erroneous or contrary to law." Fed R. Civ. P. 72(a); *see also United States v. Wilson*, 864 F.2d 1219 (5th Cir. 1989).  Because the Court finds the order clearly erroneous, it will set it aside and permit defendants to file their amended answer.

Defendants seek to include in their amended answer a defense that plaintiffs conspired to, and did, intentionally cause this collision in order to bring a false claim for damages in court.[41]  The Court must apply the Rule 16(b) factors to determine whether defendants can amend their answer after the deadline set by the Court.  *See S&W Enters.*, 315 F.3d at 536.  First, defendants stated in their initial counterclaim on July 2, 2018, that plaintiffs intentionally caused the collision.[42]  July 2 was also the deadline to file amended answers.[43]  Defendants have provided no adequate explanation for why they waited until January 14, 2019 to amend their answer to reflect this contention as a defense.  This factor therefore weighs against defendants.

---

[41]    R. Doc. 33-4 at 5-7, 9.
[42]    R. Doc. 13.
[43]    R. Doc. 9.

Second, the Court finds the amendment important to defendants. Defendants have made clear since they filed their first counterclaim that their main defense in this litigation is that plaintiffs intentionally caused the collision to file a lawsuit for damages.[44] Defendants did not state this defense in their original answer.[45] Allowing defendants to amend their answer to formally reflect this defense is certainly important. This factor therefore weighs in defendants' favor. *See Tajonera v. Black Elk Energy Offshore Operations, LLC*, No. 13-366, 2015 WL 13533519, at *4-5 (E.D. La. Jan. 30, 2015) (amended complaint considered important when it included new facts that were critical to the plaintiff's case-in-chief).

Third, there is no potential prejudice to plaintiffs if the Court permits the amendment. Again, plaintiffs have been on notice since July 2018 that defendants planned to argue at trial that they are not liable for plaintiffs' damages because plaintiffs staged this collision. Defendants also disclosed this intention throughout discovery in their interrogatory responses and during the depositions of plaintiffs.[46] It has been defendants' contention this entire case. Plaintiffs cannot plausibly assert they are surprised by defendants' motion to include this defense in their answer. This factor

---

[44]     *See id.*
[45]     *See* R. Doc. 4.
[46]     *See* R. Doc. 216-1; R. Doc. 216-2; R. Doc. 216-3; R. Doc. 216-4.

therefore weighs in defendants' favor. *See Davis v. Karl*, No. 10-875, 2011 WL 13203134, at \*2 (E.D. La. Feb. 2, 2011) (no prejudice in allowing amended answer to include new affirmative defense when the plaintiff was on notice of the defendant's intention to argue specific defense). Finally, the availability of an additional continuance is not a factor because there is no prejudice to plaintiffs.

On balance, the Rule 16(b) factors therefore support a finding that defendants should be granted leave to amend their answer. Applying the Rule 15(a) factors supports the same conclusion. While defendants may have exhibited undue delay in waiting to formally amend their answer, there is no evidence of any bad faith or dilatory motive on their part. *See Foman*, 371 U.S. at 182. Nor have defendants repeatedly failed to cure deficiencies in amendments the Court has previously allowed. *See id.* And as already addressed, there is no prejudice to plaintiffs in granting the amendment.

Magistrate Judge Roby denied defendants' motion on the grounds that granting leave to amend would be futile, because defendants failed to plead the affirmative defense of fraud with the specificity required under the Federal Rules. The court will now address this conclusion.

Federal Rules of Civil Procedure 8(b) and (c) set forth the pleading requirements for defenses and affirmative defenses, respectively. Fed. R.

Civ. P. 8(b)-(c).  A "defense" is a "stated reason why the plaintiff . . . has no valid case."  Black's Law Dictionary (10th ed. 2014).  An "affirmative defense" is an "assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true."  *Id.*  A defendant is required to "state in short and plain terms its defenses to each claim asserted against it" and "affirmatively state any avoidance or affirmative defense. . . ."  Fed. R. Civ. P. 8(b)(1)(A) and (c)(1).

In *Woodfield v. Bowman*, the Fifth Circuit held that affirmative defenses are subject to the same pleading requirements as a complaint and articulated a "fair notice" standard for pleading affirmative defenses.  193 F.3d 354, 362 (5th Cir. 1999).  Under this standard, a defendant is required to plead an affirmative defense "with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced."  *Id.* (citing *Automated Med. Labs. v. Armour Pharm. Co.*, 629 F.2d 1118, 1122 (5th Cir. 1980)).  Courts in this district have continued to apply *Woodfield*'s "fair notice" standard even after *Iqbal* and *Twombly* announced a higher pleading standard for complaints.  *See, e.g.*, *Harris v. USA Ins. Cos.*, No. 11-201, 2011 WL 3841869, at *3 (E.D. La. Aug. 30, 2011) (noting that in *Rogers v. McDorman*, 521 F.3d 381 (5th Cir. 2008), the Fifth Circuit applied the *Woodfield* standard even after *Twombly* was decided);

*Schlesinger v. Hasco Thibodaux, LLC*, No. 13-6237, 2014 WL 527657, at *2 (E.D. La. Feb. 7, 2014) (same). Notwithstanding this typical pleading standard, affirmative defenses of fraud must be pleaded with the particularity required by Rule 9(b). *See Fisk Elec. Co. v. Fid. & Deposit Co. of Md.*, No. 12-953, 2013 WL 592907, at *5 (E.D. La. Feb. 14, 2013).

The Magistrate Judge correctly noted that defendants cannot state an affirmative defense of fraud. That affirmative defense requires defendants to plead the elements of fraud under Louisiana law—including reliance. *See, e.g., Farnham v. Electrolux Home Care Prod., Ltd.*, 527 F. Supp. 2d 584, 588 (W.D. Tex. 2007) (holding that because reliance was an element of fraud under Texas law, "a disclaimer of reliance precludes a party from raising fraud as an affirmative defense"). Defendants' assertions throughout this litigation are incompatible with fraud, because defendants do not allege that they ever believed plaintiffs' representations to be true.

But defendants' proposed amendment is not futile. Defendants' assertion that plaintiffs conspired to, and did, intentionally cause this collision to recover damages in litigation is simply a defense to plaintiffs' negligence claim.[47] This defense complies with the pleading standard for defenses set by Rule 8(b). It is a statement in "short and plain terms"

---

[47]    R. Doc. 33-4 at 4 ¶ 13, 5-6 ¶ 15, 9 ¶ 27.

explaining why plaintiffs' claim for negligence fails. Fed. R. Civ. P. 8(b)(1)(A).

The proposed amended answer also contains a properly-pleaded affirmative defense along these lines. Defendants assert that even if plaintiffs can establish Chambers acted negligently, defendants should not be held fully liable for plaintiffs' injuries because plaintiffs' "intentional acts . . . contributed to the occurrence of the alleged accident" and their damages.[48] This statement is akin to "illegality" and "contributory negligence," both of which are affirmative defenses listed in Rule 8(c). *See* Fed. R. Civ. P. 8(c). This affirmative defense is adequately pleaded because defendants provide plaintiffs with "fair notice" of the nature of the defense and what arguments they will make at trial. *See Woodfield*, 193 F.3d at 362.[49]

Because defendants' assertions in their proposed amended answer satisfy the pleading standards for defenses and affirmative defenses in Rules 8(b) and (c), amendment is not futile. In all, because defendants' motion satisfies Rules 16(b) and 15(a), the Court will set aside the Magistrate Judge's order and grant defendants leave to amend their answer.

---

[48] *Id.* at 5 ¶ 14, 6-7 ¶ 16.
[49] Defendants' answer would also satisfy the *Iqbal* and *Twombly* pleading standards.

**B. Motion to Permit Depositions of Fact Witnesses**

Plaintiffs move for leave to conduct eight depositions after the discovery deadline has passed.[50]  They seek to depose (1) Tara Blunt, (2) Charlotte Jones, (3) Raymond Riley, (4) Cornelius Garrison, (5) Marlene Kennedy, (6) Harry Dorsey, (7) a Rule 30(b)(6) deposition of J.S. Investigations, and (8) Robert Weber.[51]  Plaintiffs' motion is denied.  As an initial matter, plaintiffs' motion violates the Court's order that "[t]here will be no further motion practice of any kind unless ordered by the Court."[52]  Plaintiffs' motion is denied for this reason alone.  Plaintiffs' motion is separately denied under Rule 16(b) for each of the witnesses they seek to depose.

*1.    Tara Blunt, Charlotte Jones, Raymond Riley, Cornelius Garrison, and Marlene Kennedy*

First, plaintiffs have not provided an adequate explanation for their delay in deposing these individuals to justify an extension of the discovery deadline.  *See S&W Enters.*, 315 F.3d at 536.  The record reflects that plaintiffs were on notice as early as *October 2018* that each of these individuals was relevant to defendants' argument that this collision was

---

[50]    R. Doc. 210.
[51]    R. Doc. 210-1 at 3.
[52]    R. Doc. 173.

staged. On October 18, 2018, defendants asked each plaintiff during depositions whether they knew these individuals.[53] Defendants' briefing papers in connection with their motion to alter the Court's dismissal of their counterclaim also included many of these individuals' names, and linked them to other similar accidents on Interstate 10.[54] Those briefs were filed in October and November 2018.[55] Then, on February 23, 2019, nearly one month before the deadline, defendants disclosed in an interrogatory response that they intended to call each of these individuals to testify at trial.[56] In that response, defendants stated the topics on which each witness would testify.[57] The record thus reflects that before the discovery deadline, plaintiffs were aware (1) of these individuals' identities, (2) that defendants had linked many of them to other similar collisions on Interstate 10, and (3) of defendants intention to have them testify at trial and the matters on which they could testify. Plaintiffs nevertheless chose not to depose them. There is

---

[53]    *See* R. Doc. 216-1; R. Doc. 216-2; R. Doc. 216-3.
[54]    *See* R. Doc. 22-1; R. Doc. 32.
[55]    *Id.*
[56]    R. Doc. 210-1 at 5; R. Doc. 216-4 at 2-5.
[57]    R. Doc. 210-1 at 5-7. Plaintiffs contend that defendants' disclosure was materially different from their witness list, which was filed into the record at the close of discovery in accordance with the Court's scheduling order. But a comparison of the disclosure with the witness list reveals that they were substantially the same. *See id.* Plaintiffs' argument that any insufficiency in defendants' interrogatory responses justifies an extension of the discovery deadline is therefore unavailing.

18

not good cause to extend the discovery deadline in such a circumstance. *See EEOC v. Prod. Fabricators Inc.*, 285 F.R.D. 418, 422-23 (D. Minn. 2012) (finding no good cause to reopen discovery to allow a party to further depose a witness, when the party "made a strategic decision about what to ask [the witness] during his deposition").

In addition, the record suggests that plaintiffs personally know some of the individuals they now seek to depose. Defendants assert—and plaintiffs have never fully rebutted—that these individuals are either related to plaintiffs or otherwise have some social connections to them.[58] For instance, plaintiffs Antoine Clark and Shirley Harris both stated during their depositions that they were at Tara Blunt's apartment before the collision.[59] Plaintiffs also concede that Harris spoke to Cornelius Garrison on the day of the collision.[60] Plaintiffs have also produced to the Court a sworn affidavit from Marlene Kennedy, in which she recants statements she previously made regarding staging accidents.[61] This affidavit suggests that plaintiffs or their counsel have had access to Kennedy. That plaintiffs have these

---

[58] *See* R. Doc. 21-1 (defendants' proposed amended counterclaim).
[59] R. Doc. 175-1 at 7; R. Doc. 175-2 at 3-4.
[60] *See* R. Doc. 208-1 at 9.
[61] *See* R. Doc. 208-3.

connections reinforces that plaintiffs have no good explanation for why they were not able to depose these individuals during the discovery deadline.

Plaintiffs' stated explanation for their inability to depose these individuals before the discovery deadline is that they believed their testimony was not relevant at trial, and therefore they did not want to "burden plaintiffs with unnecessary costs."[62] Plaintiffs state that they believed their testimony was not relevant because the Court had dismissed defendants' counterclaim twice, and because the Magistrate Judge denied defendants leave to amend their answer on April 5, 2019.[63] But any suggestion that the Magistrate Judge's order influenced plaintiffs' decision not to depose these individuals before the discovery deadline fails, because that order was issued more than two weeks *after* the discovery deadline.[64] Plaintiffs' argument that the Court's prior dismissal of defendants' counterclaim somehow justifies their decision not to depose these individuals during discovery is similarly unavailing. The Court dismissed defendants' counterclaim because they failed to state a cognizable cause of action for fraud under Louisiana law.[65] This decision was irrelevant to

---

[62] R. Doc. 210-5 at 10.
[63] *Id.* at 9-10.
[64] *See* R. Doc. 9; R. Doc. 147.
[65] *See* R. Doc. 20 at 6-8.

defendants' defense that they should not be held liable for plaintiffs' alleged injuries because plaintiffs staged the collision. Plaintiffs' apparent misunderstanding of the difference between a counterclaim and a defense does not constitute good cause to now conduct these depositions.

As already mentioned, plaintiffs were on notice in July 2018—when defendants filed their initial counterclaim—that defendants would assert this defense at trial.[66] Defendants then moved for leave to file their amended answer on January 14, 2019 to formally include this defense in their answer.[67] That motion was pending up to and through the March 18, 2019 discovery deadline. Plaintiffs were thus aware well before the discovery deadline that defendants intended to assert this defense at trial, but opted to move to exclude these individuals from testifying rather than depose them.[68] Plaintiffs are not entitled to a do-over now.

Next, plaintiffs do not show the importance of conducting these depositions. Plaintiffs argue that they are important (1) because the Court instructed *plaintiffs' counsel* at the pretrial conference to investigate whether plaintiffs' claims in this litigation are true, and (2) because "the truth needs

---

[66] *See* R. Doc. 13.
[67] R. Doc. 33.
[68] R. Doc. 154.

to be uncovered so that this case can either be dismissed or so that this case can proceed to trial."[69]  This is a woeful excuse to reopen discovery. Discovery is conducted for the benefit of the parties, not the parties' attorneys.  The Court's statement to counsel was a reminder that they should take it upon themselves to ensure that they are not representing parties who are making untruthful claims.  That inquiry of course *should have* been made at the beginning of this litigation, or whenever counsel enrolled in it.  It is not a reason to reopen discovery.

Finally, defendants would be prejudiced by granting this extension, because they would have to expend resources defending these depositions when the discovery deadline has already passed.  Plaintiffs therefore have not shown good cause to depose these witnesses under Rule 16(b).

### 2.    *Harry Dorsey*

Plaintiffs' motion to depose Harry Dorsey is also denied under Rule 16(b).  Plaintiffs explain that Dorsey was not disclosed as a potential witness in defendants' interrogatory responses, and that they therefore did not learn of Dorsey's potential testimony until defendants filed their witness and exhibit list on March 18, 2019.[70]  March 18 was also the discovery deadline.[71]

---

[69]    R. Doc. 210-1 at 11.
[70]    *Id.* at 10.
[71]    R. Doc. 9.

But defendants disclosed Dorsey's identity in a brief filed in November 2018, in which they identified him as part of a similar collision on Interstate 10 around the time of plaintiffs' collision.[72]  Defendants' February 23, 2019 interrogatory responses also connected Dorsey to a similar collision.[73] Plaintiffs were thus on notice before the discovery deadline that defendants believed Dorsey to be relevant to their argument that plaintiffs staged this collision, but plaintiffs still chose not to depose him.

In addition, plaintiffs evidently have had access to Dorsey already, because they are in possession of his sworn affidavit in which he recants his prior statements regarding staging another collision.[74]  This affidavit lessens the importance of his deposition, because plaintiffs already possess impeachment evidence.  Plaintiffs therefore have not shown good cause to extend the discovery deadline to depose Dorsey.

### 3.    *J.S. Investigations*

Plaintiffs also seek to conduct a Rule 30(b)(6) deposition of J.S. Investigations.  J.S Investigations was disclosed in defendants' February 23, 2019 interrogatory response as investigator Joe Schembre's corporate

---

[72]    R. Doc. 32 at 8.
[73]    R. Doc. 216-4 at 11.
[74]    R. Doc. 208-2.

entity.[75]   Plaintiffs therefore do not have good cause to conduct this deposition for the reasons already stated.

### 4.   Robert Weber

Lastly, plaintiffs seek to depose Robert Weber, an investigator who secured a recorded statement from Marlene Kennedy in which she admitted to having knowledge of other individuals staging collisions.[76]  Plaintiffs state that the statement was videotaped, and in the video Weber is seen buying Kennedy food and handing her twenty dollars.[77]   Plaintiffs argue that this video "raises questions" whether defendants are "paying witnesses" to offer statements favorable to defendants.[78]   Plaintiffs do not state when they received this recorded statement.  Defendants state in their brief that they produced it to plaintiffs on January 29, 2019.[79]  Their February 23, 2019 interrogatory response indeed refers to this recorded statement.[80]   The record before the Court thus indicates that plaintiffs were aware of this recorded statement prior to the discovery deadline, but chose not to pursue

---

[75]   R. Doc. 216-4 at 7.
[76]   R. Doc. 210-1 at 12.
[77]   *Id.*
[78]   *Id.*
[79]   R. Doc. 216 at 9.
[80]   R. Doc. 216-4 at 13-14.

Weber's deposition.  They therefore do not have good cause to conduct this deposition for the reasons already stated.

### C.    Motion to Alter or Amend the Court's Order

This motion also violates the Court's order that motion practice is closed, and is dismissed on that basis alone.[81]  It is also dismissed on the merits.

Plaintiffs' motion is brought under Rule 60(b) to alter the Court's prior order denying plaintiffs' motion to exclude certain witnesses from testifying. A district court has broad discretion to grant or deny a motion under Rule 60(b).  *Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir 1998). Under Rule 60(b), a court may grant relief from a final judgment or order only upon a showing of:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or

---

[81]    R. Doc. 173.

> otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
> (6) any other reasons justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). The burden of establishing at least one of these reasons is on the moving party, and the determination of whether that burden has been met rests with the discretion of the Court. *See Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

Plaintiffs' motion is largely a refutation of the Court's determination on the merits.[82] Plaintiffs argue that the witnesses the Court has permitted to testify are not relevant to this case. This is not a proper basis for a motion under Rule 60(b).

But plaintiffs do identify one Rule 60(b) reason in their motion. Plaintiffs state that defendants misrepresented evidence that they submitted to the Court in their opposition to plaintiffs' motion to exclude Harry Dorsey.[83] *See* Fed. R. Civ. P. 60(b)(3) ("misrepresentation" by opposing party is grounds for relief from order). Defendants submitted plaintiff Shirley Harris's phone records to the Court, and stated that in those records was evidence that Dorsey had been in contact with Harris around the time of

---

[82] *See* R. Doc. 208-1.
[83] *Id.* at 5-6.

the collision.  Plaintiffs now submit an affidavit from Harris, in which she states that the phone number defendants claimed belonged to Dorsey—504-300-3555—is actually the number for Harris's cousin Danielle.[84]  In response, defendants have produced a "Patient Information" form that they state is from Dorsey's medical records, in which Dorsey listed his phone number as 504-300-3555.[85]

This is a factual dispute between the parties that can be addressed during Dorsey's testimony at trial.  It is not grounds to alter the Court's judgment.  But defendants are instructed that—consistent with the Court's prior orders—they must lay a foundation at trial that Dorsey was in contact with Harris around the time of the subject collision before eliciting testimony about other collisions Dorsey claims to have staged.

---

[84]     *See* R. Doc. 208-4.
[85]     R. Doc. 215 at 5; R. Doc. 215-2.

## IV. CONCLUSION

For the foregoing reasons, the Magistrate Judge's order denying defendants' motion for leave to file a supplemental and amending answer is set aside, and defendants' motion for leave to file a supplemental and amending answer is GRANTED.  Plaintiffs' motions are DENIED.


New Orleans, Louisiana, this __28th__ day of May, 2019.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE