UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KIERRA THOMAS** | * | **CASE NO: 18-cv-4373** |
| **ANTOINE CLARK,** | * | |
| **AND SHIRLEY HARRIS** | * | |
| | * | |
| **VERSUS** | * | **JUDGE SARAH S. VANCE** |
| | * | |
| **RANDALL CHAMBERS,** | * | |
| **GOD'S WAY TRUCKING, LLC** | * | **MAG. JUDGE KAREN WELLS ROBY** |
| **CANAL INSURANCE COMPANY** | * | |

**REPORT AND RECOMMENDATION**

Before the Court by referral order (Rec. Doc. 182) is the Plaintiffs, Kierra Thomas', et al **Motion to Set Expert Fees of Mr. Stanford McNabb for Deposition and Travel Expenses** (Rec. Doc. 179). The motion is opposed. (Rec. Doc. 193). The Plaintiffs filed a Supplemental Memorandum in Support of the Motion. ( Rec.doc. 202)

**I.   Factual Summary**

On April 6, 2018, Plaintiffs filed this lawsuit against defendants Randall Chambers ("Chambers"), God's Way Trucking, LLC, ("Gods Way"), and Canal Insurance Company ("Canal Insurance"), for injuries plaintiffs allegedly sustained in a motor vehicle accident on Interstate 10. Rec. Doc. 1-4, p.3. Plaintiffs allege that Chambers' negligence caused their injuries, and that God's Way is liable for their damages as Chambers' employer under the doctrine of respondent superior. *Id*. Canal Insurance allegedly insured the tractor-trailer Chambers was driving on the day of the collision. *Id*.

The Plaintiffs filed the subject motion challenging the fee of Mr. Stanford McNabb ("McNabb") the Defendant's life care plan expert on April 23, 2019.  Rec. Doc. 179. On May 29, 2019, the District Judge administratively stayed and closed the matter. On June 29, 2021, the

Plaintiffs filed a Motion for Partial Lift of Stay order which was granted on September 21, 2021 directing the undersigned to give prompt consideration to the previously filed and stayed motion. Rec. Doc. 226.

This dispute is over the travel costs that Mr. McNabb believes that he should recover for his travel expenses and the additional deposition testimony beyond the prepaid one hour. Rec. Doc. 179-1, p.1 McNabb has demanded that he be paid an additional $6,000.00 for travelling from Lafyette to New Orleans, in addition to the $1,200.00 already paid to McNabb for his testimony at deposition. He also seeks compensation for 1.5 hours of additional testimony at a rate of $1,200.00 per hour.

Ms. Motta ("Motta"), plaintiffs' counsel, admittedly signed the terms of service twice but now disputes the validity of the agreement. *See* Rec. Doc. 202; Rec. Doc. 193-2. Motta contends that while she signed the contract, her signature was for the purpose of paying McNabb for his deposition expert fee, not for his travel from Lafayette to New Orleans. Rec. Doc. 202, p. 3. She contends that her signature on the agreement does not constitute her consent to this provision of the agreement. Rec. Doc. 179-1, p.3.

Motta also contends that McNabb, who is minimally qualified as a life care expert, believes that he should get twice the compensation as Dr. Stokes, a premier life care planner with a PhD. *Id*. at p. 5. Motta contends that the contract of employment shows that McNabb charges $3,000.00 for the entire report on life care planning, yet he invoiced her $6,000 just to travel from Lafayette to New Orleans. *See* Rec. Doc. 179-6; Rec. Doc. 179-7. Motta further alleges that, although she did not agree with McNabb's deposition, she offered to pay for going over the first hour of the deposition, which included Defense counsel's questions. *See*. Rec. Doc. 179-1. Motta

2

contends that McNabb refused her good faith offer and instead wrote insulting emails with threats of lawsuits, and also made belittling and sarcastic comments. *Id*. at p.6.

Motta contends in her supplemental memorandum that there was not a "contract" because of: (1) Error/Mistake and (2) Ambiguities in the Contract which are to be construed against the maker of the contract, in this case McNabb, the expert. Rec. Doc. 202. She contends that McNabb has threatened and executed on the threat to sue her, her firm, and clients necessitating the consideration of the matter. Rec. Doc. 224-4. McNabb filed suit in the Fifteenth Judicial District Court on June 28, 2019. *Id*.

McNabb and McNabb Rehabilitation Services, Inc. opposes Motta's motion contending that Motta agreed to the terms and conditions and fees established in the contract. Rec. Doc. 193. McNabb agrees that the deposition was set at defense attorney's office and contends that all fees including travel time outside of 30 miles were enumerated in the contract. *Id*. McNabb further contends that Motta could have objected to the location but failed to do so. *Id*. McNabb also contends that he arrived at the location of the deposition and again presented the "contract" or terms of service to Motta, she signed the agreement and did not object to its terms. *Id*.

Thereafter McNabb contends that he submitted an invoice for payment of the excess deposition time, travel time, and mileage per the agreement. *Id*. Thirty days after nonpayment, McNabb contends that he submitted a past-due invoice to Motta who refused to abide by the terms of the contract for the first time and has continued to refuse to do so. *Id*. McNabb contends that Motta unequivocally demonstrated agreement with the conditions set in the Deposition Policy regarding depositions by submitting payment for the first hour of deposition as provided for in the contract. *Id*. He contends that her signature further confirms her agreement with the Deposition Policy and as such this dispute is a breach of the agreement. *Id*. at p.3. He therefore requests enforcement of the terms of their agreement.

## II.     **Standard of Review:**

An expert is entitled to be paid for his/her deposition, expert travel time, but not in advance, unless the parties agree. Fed. R. Civ. P. 26(b)(4)(C).  Rule 26(b)(4)(E) provides that "[t]he party seeking reimbursement of their expert witness fees has the burden of demonstrating to the court that the expert's rate and fee are reasonable."

Generally, the courts apply a seven-factor test for evaluating the reasonableness of an expert's fee:

> The witness's area of expertise; (2) the education and training that is required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the party who retained the expert; (6) fees traditionally charged by the expert on the rebated matters; and (7) any other factor likely to be of assistance to the court in balancing the interest implicated by Rule 26.

The burden of proving the reasonableness of an expert's fees lies with the party seeking reimbursement.  *See Parkcrest Builders, LLC v. Hous. Auth. Of New Orleans,* 336 F.R.D. 527 (E. D. La. 2020). The goal of Rule 26(b)(4)( e) is to calibrate expert fees so that the party seeking discovery will not be hampered by unreasonably high fees which prevent feasible discovery, without placing an undue burden on efforts to hire quality experts. Ultimately, however, it is in the court's discretion to set an amount that it deems reasonable. *Id*.

Further, under Louisiana law, the interpretation of a contract is the "determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning." *E.R. Campbell v. Melton*, 817 So.2d 69, 74 (La.2002); *see* LA. CIV.CODE ANN. art. 2045–2057 (West 2002). If the words of a contract are clear and explicit and do not lead to absurd consequences, then no further interpretation may be made in search of the intent of the parties. *Campbell*, 817 So.2d at 75.

4

### III.    Analysis

Plaintiffs' counsel in challenging the invoice and rate of pay for McNabb also challenge his qualifications as a life care planning expert. Mr. McNabb only became certified in the area in September 2016, three years before this lawsuit was filed and only has a bachelor's degree not a Doctorate Degree. Rec. Doc. 179-1, p. 5. She further points out that he has far less experience compare to other experts in the same field as such his rate of $1,200 per hour is excessive. *Id*. Plaintiff's counsel draws a contrast between the experienced, doctorate level expert Dr. Stokes, who charges $1500.00 for two hours of deposition testimony and Mr. McNabb bachelor's degree certified expert of $1200.00 for one hour of testimony as a deposit. *Id*.

As to the nature, quality, and complexity of the testimony, the Plaintiffs' counsel points out that McNabb only followed the IME physician's opinion and ignored all other treating physician's recommendations in formulating his opinion. Rec. Doc. 179-1, p.5. Plaintiffs' counsel also alleges that McNabb rendered opinions outside the scope of his expertise and experience. *Id*.

Therefore, Plaintiffs' counsel contends that the expert fee of $8,015.70 is arbitrary, excessive, offensive, and egregious given his level of experience. *Id*. Consequently, Plaintiffs' counsel contends that while she offered to pay for the additional time, she spent taking his deposition, McNabb seeks compensation from her for the time defense questioned him. Additionally, Plaintiff's counsel contends that McNabb is requesting compensation for his travel expenses which were incurred not at her direction, but at the direction of the defense counsel. *Id*. Moreover, Plaintiff's counsel contends that there was no valid contract for multiple reasons, primarily err/mistake and ambiguities in the contract. Rec. Doc. 202, p.2.

McNabb contends that Plaintiffs' counsel refusal to pay him for the travel time at the rate she agreed to in the contract and for the additional testimony beyond the initial one hour is a violation of the terms the contract. Rec. Doc. 193.

The record shows that the life care planning expert provided counsel with a copy of his policy regarding depositions and she signed the agreement on March 1, 2019 and March 14, 2019 indicating that she would "remit payment to McNabb Rehabilitation Services according to the terms and conditions in the document." Rec. Doc. 193-2.

The relevant portions of the policy regarding depositions provides as follows:

> A prepayment of $1200.00 is required for the deposition. This f*ee covers organization/copies of research material, telephone calls/correspondence to schedule deposition and file preparation; comprehensive file review/testimony preparation; local travel time and up to 3**0 miles expense**; and the <u>**first hour**</u> of deposition testimony.*
>
> Should the deposition testimony/**travel time** exceed the prepaid first hour, additional charges are prorated in **quarter hour increments** billed at $1,200.00 per hour. Additional charges are billed, due and payable within five working days. ……
>
> Mileage will be charged at the current Internal Revenue Service rate of $0.65 per mile. All **actual expense**s including hotel, parking, toll fees, meals and entertainment are **reimbursable per receipts** as submitted. Payment for mileage and expenses will be remitted within five working days of submission. Rec. doc. 193-2.

Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." LA. CIV. CODE ANN. art. 1906. Under Louisiana law, formation of a valid and enforceable contract requires that "(1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 202 (5th Cir. 2016) (citation and quotation omitted).

Consent is "established through offer and acceptance," which may generally "be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." LA. CIV. CODE ANN. art. 1927. "Thus, an enforceable contract requires a meeting of the minds." *Read v. Willwoods Cmty.*, 165 So. 3d 883, 887, reh'g denied, (May 1, 2015) (citing

6

*State v. Pelas*, 745 So. 2d 1215, 1217 (La. App. 1 Cir. 11/5/99). Further, "it is the burden of the party seeking to enforce a contract to show the contract exists." *Alfortish v. GreenSky, LLC,* 2017 16-15084, 2017 WL 6998630 (E.D. La. Feb. 2017) citing *FIA Card Servs., N.A. v. Weaver*, 10-1372 (La. 3/15/11); 62 So. 3d 709, 719 (citing LA. CIV. CODE ANN. art. 1831; *Kosmala v. Paul*, 569 So. 2d 158, 162 (La. App. 1 Cir. 1990), writ denied, 572 So. 2d 91 (La. 1991) ("The party seeking to enforce arbitration provisions has the burden of showing the existence of a valid contract to arbitrate") (citing *Ciaccio v. Cazayoux*, 519 So. 2d 799, 800 (La. App. 1 Cir. 1987))).

In Louisiana, "a party's contractual consent 'may be vitiated by error, fraud, or duress.' " *Chalos & Co., P.C. v. Marine Managers, Ltd.*, Civil Action No. 14-2441, 2015 WL 6442558, at *22 (E.D. La. Oct. 23, 2015) (citing LA. CIV. CODE ANN. art. 1948). However, "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known by the other party." LA. CIV. CODE ANN. 1949.

"Cause is the reason why a party obligates himself" and is the functional equivalent of consideration at common law. LA. CIV. CODE ANN art. 1967; see *Acadian Cypress & Hardwood Inc. v. Stewart*, 121 So.3d 667, 671 (La. Ct. App. 1st Cir. 3/22/13). However, unlike consideration, cause only requires a valid reason for the promise, the promisor need not get anything in return. *See Id*. at 671-2.

"Error may concern a cause" when the error bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. LA. CIV. CODE ANN art. 1950. "If error vitiates a party's consent, the contract may be rescinded." *Chalos*, 2015 WL 6442558, at *22-3

7

(citation omitted). Accordingly, "a party asserting error as a defense to enforcement of a contract must prove (1) an objective cause, or reason, why it entered into the contract; and (2) an error as to that cause, which may entitle the party to rescission or reformation of the contract." *Id*.

Reformation is an equitable remedy designed to correct an error in the contract. *See Fruge v. Amerisure Mutual Insurance Co,* 663 F.3d 743 (5th Cir. 2011). Parole [sic] evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous." *Id. citing Samuels v. State Farm Mut. Auto. Ins. Co.,* 939 So.2d 1235, 1240 ( La. 2003). To reform an instrument, "there must be clear proof of the antecedent agreement as well as the error in committing it to writing." *Id.* at 748. "The burden is on the one seeking reformation to prove the error alleged by clear and convincing evidence." *Id*. Louisiana law is clear: a party may present extrinsic evidence to prove mutual mistake, even when the language of the contract is not ambiguous. *Id*.

In Louisiana, error can vitiate consent in two ways, bilaterally, i.e., both parties are mistaken, or unilaterally, i.e., only one party is mistaken. See *Peironnet v. Matador Res. Co.*, 2012-2292 (La. 6/28/13), 144 So.3d 791, 807. When both parties are individually mistaken, i.e., bilateral error, both parties are clearly aware the matter in error was the cause of their mutual obligations, thus vitiating the consent of both parties. *See Id*. at 807. When one party is mistaken, "that mistake will vitiate consent if the other party knows or should have known." *Id*.

Here, the Court can infer that Motta has alleged a unilateral error. "A unilateral error may invalidate a contract when an error exists as to a fact that was a cause for making the contract and when the party who induced the error knew or should have known that it was the cause." *LaCross v. Cornerstone Christian Acad. of Lafayette, Inc*., 2004-341 (La. Ct. App. 3rd Cir. 12/15/04), 896 So.2d 105, 107–08, writ denied, 2005-0128 (La. 3/24/05), 896 So.2d 1037. In other words, if only

one party is in error, the contract will be rescinded if: (1) the error concerns a cause without which the obligation would not have been incurred; and (2) cause was known or should have been known by the other party.

The mistake, according to Motta, occurred when she signed the agreement believing that she was agreeing to the deposition. Rec. Doc. 179-1, p. 3. She admits to making the advance payment of $1200.00 for one hour of testimony along with several other preparation duties which McNabb passed on to her even though she recognized that the fee was "exorbitant" and some of the services should have been borne by Poché. *Id.* at p. 2. Motta therefore admits to the existence of a contract. *Id*.

Although Motta admits that she agreed to pay for the first hour of McNabb's testimony and the additional ¼ hour of deposition testimony as an expert fee, she complains that she was presented with a demand to pay more for McNabb's travel time than his testimony to which she did not agree. *See* Rec. Doc. 179-1. As stated by Motta, she did not believe that McNabb "with a straight face," was going to charge her $1,200.00 per hour to travel from New Orleans from Lafayette without confirming with her to make sure they were on the same page. Rec. Doc. 202, p. 3. Notably, Motta did not object before signing the agreement. R. Doc. 193-2.

There is no evidence that Motta inquired or refused to sign the document as submitted or demonstrated that this provision was cause or reason for her refusal. The initial email dated February 28, 2019, also indicates that the deposition would be at Poché's office here in New Orleans and shows no objection by Motta. Rec. Doc. 179-2, p.1.

It is however undisputed that Poché's law office is in New Orleans; it was therefore reasonable for Motta to conclude that Poché would pay for his experts travel to his office, ot Motta. The Court notes that McNabb's services contract, which Poché would have been required

9

to sign, also indicated that deposition travel would be compensated suggesting that both counsel could be responsible for compensating McNabb for his deposition related travel. *See* Rec. Doc. 179-6, p. 2.

Motta adamantly says that she would have driven to Lafayette. R. Doc. 179-1, p. 4. She further contends that McNabb's fee for travelling to New Orleans is outrageous because there is no distinction between the cost of him testifying and the cost of him traveling to provide testimony. *Id.* at p. 2. She further argues that the absurdity of his fee is evident because he would be paid $6,000.00 before even arriving at the location to provide his testimony. *See Id.* at p. 7.

Motta further states that due to the proximity of the trial, which was scheduled for April 29, 2019, she had to go forward with the March 14, 2019 deposition. *Id*. at. 5. Nevertheless, there is no evidence in the record that she was confused as to the location of the deposition, the confusion seemed to stem from the rate she would pay for McNabbs travel to New Orleans. Additionally, the contract itself identifies the services subject to the fee as "deposition testimony/travel".[1]

Louisiana courts have long said that any doubt or ambiguity as to the meaning of a contract must be eliminated by interpreting the contract against the party who prepared it. See, LA. CIV. CODE ANN art. 2056; citing *Ouachita Nat. Bank in Monroe v. Williamson*, 338 So.2d 172 (La.App.2nd Cir.1976); *Sabine Const. Co., Inc. v. Cameron Sewerage Dist. No. 1*, 298 So.2d 319 (La.App.3rd Cir.1974).

A contract is ambiguous, when inter alia, its "written terms are susceptible to more than one interpretation," "there is uncertainty as to its provisions," or when "the parties' intent cannot be ascertained from the language used." *Sequoia Venture No. 2, Ltd. v. Cassidy*, 968 So.2d 806,

---

[1] To the degree Motta did not believe the contents or was not aware of the contents of the instrument she signed, she must establish with reasonable certainty that she was 'deceived.' (*Lamarque v. Barbara Enters., Inc*., 06-1422 (La. App. 4 Cir. 4/25/07); 958 So. 2d 708, 713).

10

809 (La.Ct.App.2007); accord *Campbell v. Melton*, 817 So.2d 69, 75 (La.2002). The Fifth Circuit, describing Louisiana law, has suggested that multiple interpretations must each be "reasonable" to establish ambiguity.

If the contract is ambiguous, extrinsic evidence is admissible to interpret the intent behind an ambiguous provision. *See Greenwood 950 LLC v. Chesapeake Louisiana, L.P.*, 683 F.3d 666 (5th Circ. 2012). A doubtful provision must be interpreted "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." *McDuffie v. Riverwood Int'l Corp.*, 660 So.2d 158, 160 (La.Ct.App.1995). If the contract remains ambiguous, and if there are two or more reasonable interpretations, the contract is construed against its drafter.

The record suggests that the insertion of word travel as "deposition/travel" in the contract was an afterthought and the rate is unusually high testimony or travel. Further given that Motta paid the same fee for one hour of McNabb's testimony, she may have been deceived to think that the inclusion of travel at such a rate was a mistake although she did not indicate such until now.

Additionally, the provision is vague for the following reasons. The contract in question provides, "Should the deposition testimony/ travel time exceed the prepaid first hour, additional charges are prorated in quarter hour increments billed at $1,200.00 per hour." Rec. Doc. 193-2. In contrast, the provision preceding this section in contrast provides that, " a prepayment of $1,200.00 is required for the deposition." *Id.* It further indicates that prepayment covers additional expenses such as organization, copies of research material, telephone calls; correspondence, to schedule deposition and file preparation; comprehensive file review/testimony preparation, local travel time and up to 30 miles expense and the first hour of deposition. *Id.*

According to the contract, the initial $1200.00 prepayment was for several services including one hour of the deposition and for some travel. It is therefore unclear whether the $1200.00 is solely for the additional testimony time and other services, or if McNabb actually intended to charge $1200.00 per hour solely for traveling to New Orleans. Normally experts charge only 50% of the normal billing rate for travel. It seems illogical that McNabb would charges the prepayment rate for only the limited service of traveling to the city. *See United States v. 1.604 Acres of Land*, 275 F.R.D. 234 (E.D. Va. 2011). Most incredibly, the proposed $6,000.00 expense would have been incurred before McNabb provided one ounce of testimony: an absurd result for sure.

Additionally, applying the terms as interpreted by McNabb would also mean that just by traveling from Lafayette to New Orleans he would be due twice the amount of money than the amount he received from Defense counsel for doing the work of preparing the life care plan; also, a notably absurd result. Therefore, because the provision is ambiguous and would lead to bizarre consequences, the Court finds that there was no meeting of the minds as to the travel reimbursement provision. As such, the contract will be construed against McNabb and reformation of the contract is inappropriate.

In determining the appropriate way to enforce the contract through reformation the Court will determine the reasonable rate for McNabb. Motta contends that the Court should set the hourly rate for McNabb's expert's testimony. Motta relies upon, *Williams v. M-I LLC,* for the proposition that McNabb's reasonable fee was $575.00 even though he claimed that it was $1,200.00. CA-050404, 2006 WL 2604672, (W.D. La. 9/8/2002). McNabb in contrast does not propose a fee other than the $1,200.00.

It is settled that, "Fees shall be supported by contemporary, itemized time records, segregated by types of services performed." *Cali v. Republic Fire. Cas. Co.*, 2009 WL 10679758, at *2 (E.D. La. Nov. 25, 2009). In assessing the reasonableness of an expert's fee, the Court should consider the expert's education, training, experience, the prevailing rate for comparable experts, and the nature and complexity of the information sought. *See Massasoit v. Carter,* 227 F.R.D. 264, 265 (M.D.N.C. 2005). In general, "[a]n expert's regular hourly rate for professional services is presumptively a reasonable hourly rate for deposition." *Barrett v. Nextel Comms.*, No. 04-CV-74556, 2006 WL 3744757 (E.D. Mich. Feb. 6, 2006).

The evidence of record does not clearly show an hourly rate charged by McNabb. He charged $1,200 for the first hour but enumerated a series of services that purportedly substantiated the rate of $1,200.00. The record further shows that McNabb has a bachelor's degree and five-years of experience as an accredited life care planner. [1] In contrast, other life care planners such as Dr. Lacy Sapp and Dr. Aaron Wolfson, each have PhD's and decades of experience charge $1,200.00 for a **two-hour block of deposition.** [2] Rec. Doc. 179-1, p. 5. Dr. Stokes, who is one of the premier life care planners in the state charges $1,500.00 for a **two-hour deposition**. Rec. Doc. 179-5. Notably Stokes only charges **$750.00 per hour** for each additional hour of deposition testimony beyond the two-hour block. *Id*. While, Drs. Wolfson and Sapp charge **$600.00 per additional hour** of testimony beyond the two-hour block.

McNabb's purported rate for additional testimony is excessive considering the extrinsic evidence and should be reduced to $600 per hour. According to Motta, the deposition went "slightly more than an hour." She offered to pay the additional .25 hour of the deposition as an

---

[1] At the time the motion was filed McNabb had been certified as a life care planner as of September 28, 2016. Rec. doc. 179-3, Stan McNabb CV 0002.
[2] Sapp has been a Certified life Care Planner since 2004. Rec. doc. 179-4.

expert fee. Rec. Doc. 179-8. McNabb, however, seeks compensation for another 1.5 hours of additional testimony and the Court has no documentation to confirm how long the deposition went beyond the hour. Rec. Doc.193-8.

It is undisputed that the deposition went over one (1) hour, so Motta does owe McNabb an additional fee. The challenge is that neither Motta or McNabb provided proof to the Court as to the start and stop time of the deposition. Nevertheless, McNabb is due compensation at an hourly rate of $600.00 for the time exceeding one (1) hour per the agreement as determined by the deposition transcript start and stop time.

The remaining provisions of the contract are unambiguous but lack documentation to substantiate the amount claimed. Motta's position seems to acknowledge that she owed McNabb for his travel to New Orleans but was displeased with the rate. *See* Rec. Doc. 179-1, p. 6. In her memorandum in support of her position, Motta contends that Judge Wilkinson, denied travel costs reimbursement. *citing Gilmore v. Audubon Nature Institute*, 353 F. Supp. 3d 499 (E.D. La. 2018).

As an initial matter, *Gilmore* is distinguishable from the subject case. The expert in Gilmore did not have a contract with counsel for the reimbursement of travel costs. 353 F. Supp. 499. Motta clearly realized although she may not like it, she owes McNabb for traveling to New Orleans for her to depose him pursuant to the agreement. Additionally, there is no disputing that she had multiple notices that he would be traveling to New Orleans and that she agreed to reimburse him for his mileage.

Furthermore, *Gilmore* involved an out of state expert and not an out of parish expert whose travel costs would normally not be exorbitant. *Id.* Judge Wilkinson in *Gilmore* found that he, "saw no reason why this case required out-of-state expert with the associated additional travel-related expenses that such employment involve*s" See Id.* at 507.

Given the circumstances of this matter, Motta should reimburse McNabb for his mileage for traveling to New Orleans. As noted earlier, she could have objected to paying for him to go to Poché office, she could have driven to Lafayette herself to depose him, or she could have conferred with Poché and insisted that he reimburse his expert for the cost of coming to his office. None of these options were exercised, nor did Motta object on the record during his deposition. Instead she signed the agreement again. Rec. Doc. 193-2.

Having determined that McNabb is due a mileage reimbursement, the Court notes that he charged 5 hours to travel to New Orleans and back to Lafayette but, there is no odometer evidence of mileage. The Court does have discretion to allow unverified costs where it is clear from the nature of the costs that it was necessarily incurred. *Johnson v. Rhode Island,* 2000 WL 303305, at *13 (D.R.I. Mar. 22, 2000).

The Court therefore takes judicial notice that Lafayette is 134.70 miles from New Orleans. If McNabb factored in the 30 miles that was covered by the original deposit of $1200.00, he could have only billed for 104.70 one way and 134.70 return trip or a total of 239.40 miles without odometer reading verification. The contract provided that he would charge $0.65 per mile which equals $155.61 for mileage, instead of the invoiced amount of $180.70. Rec. Doc. 193-2. Rec. Doc. 179-7.

The next issue is whether Motta owes McNabb at the reduced rate for the time he drove to and from New Orleans. The law provides that an expert may be reimbursed for travel costs at 50% of the billable rate. *1.604 Acres of Land,* Id. Motta argues that she should not be required to bear this expense because she did not designate the location of the deposition. Defense counsel, Poché made the decision to have McNabb drive to New Orleans for the deposition at his office. Moreover,

Poché's agreement with McNabb also has a provision for him to pay for his travel for deposition just like the agreement with Motta.

While Motta is correct that normally the defense counsel would bear this cost, both parties signed agreements to pay the expert for his travel time. Since Motta did not select the venue, the Court finds that the cost should be split. Motta should pay ½ of the travel time incurred by McNabb at a reduced rate of $300.00 per hour or $600.00. It's only fair that Poché who made the decision regarding the deposition's location bear the other ½ of the costs. Moreover, Motta agreed to pay for travel time and roundtrip mileage in her submission to the court. Therefore, Motta owes McNabb for two hours of travel time at a rate of $300.00 for a total of $600.00. Equity suggests that this cost be split in the manner described above. Insomuch, defense counsel owes McNabb a total of $600.00 for travel time of two hours.

McNabb also charged a parking expense of $35.00 for presumably parking at the lawyer's office. Again, the agreement indicates that he would provide receipts which were not provided. There is no evidence of the hourly parking charge at One Canal Place where the deposition occurred. The evidence available online suggests that the expense is elevated because the parking at canal pace is $38 dollars for 12-24 hours.[1] Therefore, this expense should be disallowed.

Accordingly,

## IV. **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Plaintiff's counsel pay Mr. Stanwood McNabb a travel expense of $155.61 for roundtrip mileage from Lafayette to New and a reduced rate of $300.00 per hour for 2 hours of travel time for a total of $600.00. Defense counsel who

---

[1] https://www.canalplacestyle.com/location_parking/

designated the location should bear the remaining expense of $600.00 per the agreement with McNabb.

**IT IS FURTHER RECOMMENDED** that Mr. Stanwood McNabb deposition rate is $600.00 per hour.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' counsel pay McNabb a deposition rate of $600.00 prorated in ¼ increments for the additional testimony beyond one hour as reflected by the stop time noted in the deposition transcript.

**IT IS FURTHER ORDERED** that parties shall comply with this recommendation no later than 21 days after the District Judges Adoption or if no objection 21 days after the period for objecting has expired.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court, provided that the party has been served with notice that such consequences will result from a failure to object. See *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**
10/12/21